**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0195n.06
Filed: March 13, 2007

**No. 05-6556**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

BOUNTYNER ONTHA and NALY
ONTHA, Individually and on Behalf of
PHOUTTHASEN TOMMY ONTHA,

      **Plaintiffs/Appellees,**

v.

RUTHERFORD COUNTY, TENNESSEE
and RICHARD M. EMSLIE,

      **Defendants,**

**and**

SHERIFF TRUMAN L. JONES, JR. and
RANDY D. MORROW,

      **Defendants/Appellants.**

                           /

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE**

**Before: BOGGS, Chief Judge; COLE, Circuit Judge; and ROSEN, District Judge.[*]**

ROSEN, District Judge.

## I. **INTRODUCTION**

Plaintiffs/Appellees Bountyner Ontha and Naly Ontha brought this suit in March

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

of 2004 in the United States District Court for the Middle District of Tennessee, asserting federal claims under 42 U.S.C. § 1983 and state-law claims arising out of the death of their son, Phoutthasen Tommy Ontha ("Tommy Ontha"), after he was struck by a police car. The two officers in the patrol car at the time, Defendant Rutherford County Sheriff's Deputy Richard M. Emslie and Defendant/Appellant Sheriff's Deputy Randy D. Morrow, were pursuing Tommy Ontha in the mistaken belief that he was the individual named in several outstanding felony warrants. Apart from these two sheriff's deputies, Plaintiffs have named as defendants Rutherford County, Tennessee and the Rutherford County Sheriff, Defendant/Appellant Truman L. Jones, Jr., who is sued in both his individual and official capacities.

In the present appeal, Sheriff Jones and Deputy Sheriff Morrow challenge the district court's determination that they are not entitled to qualified immunity. Sheriff Jones contends that he had no personal involvement in the incident that resulted in Tommy Ontha's death, and that the stringent standard for the imposition of supervisory liability has not been met here. Deputy Morrow, for his part, cites the undisputed fact that he was only a passenger, and not the driver, of the patrol car that struck Tommy Ontha, and he argues that he lacked sufficient means or opportunity to prevent this harm. We agree — and, indeed, Plaintiffs/Appellees seemingly concede — that the § 1983 claims against Sheriff Jones in his individual capacity cannot go forward. We further conclude that Deputy Morrow is entitled to qualified immunity as to one, but not both, of

2

the two excessive force claims asserted against him. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A.     The Incidents Leading up to the Death of Tommy Ontha**

On March 18, 2003, Defendant Rutherford County Sheriff's Deputy Richard M. Emslie was informed by his supervisor, Sergeant Judy Greene, about four outstanding felony warrants for an Asian male named Tony Kanjanabout. Deputy Emslie was further advised that Kanjanabout was known to travel in a white compact car, that he was believed to be employed at O'Charley's Restaurant in Murfreesboro, Tennessee, and that he sometimes stayed in one of the units at the Greenland Drive Apartments in Murfreesboro. Deputy Emslie also was provided with a photograph and physical description of Kanjanabout.

After confirming with the restaurant manager that Kanjanabout worked at O'Charley's, Deputy Emslie and his partner, Defendant/Appellant Sheriff's Deputy Randy D. Morrow, drove to the parking lot of the Greenland Drive Apartments in an unmarked patrol car and set up surveillance in an attempt to locate Kanjanabout. Deputy Emslie drove the patrol car, with Deputy Morrow in the front passenger seat. After about twenty or thirty minutes, the deputies observed a white compact car pull into the parking lot and an Asian male — later determined to be Tommy Ontha — emerge from this vehicle.

3

Upon determining that this person appeared to match the description and photograph of Tony Kanjanabout, Deputy Emslie decided to drive his patrol car closer to the white vehicle in an effort to confirm that this individual was, in fact, Kanjanabout. As he did so, Tommy Ontha got back into the white car and began to drive out of the parking lot. According to Deputy Emslie, he activated the patrol car's lights and gave a short burst of its siren to get the attention of the white vehicle's driver, but Tommy Ontha accelerated his car and turned onto Greenland Drive. In response, Deputy Emslie activated the police car's siren and pursued Ontha's vehicle, traveling about a mile before Ontha drove his car back into the parking lot of the Greenland Drive Apartments.

The events, and their sequence, following Ontha's return to the parking lot remain in dispute. According to Deputy Emslie, he stopped the patrol car about two car lengths behind Ontha's vehicle, and Deputy Morrow then exited the police car and began giving verbal commands to Ontha. Deputy Emslie further asserts that Ontha briefly emerged from his car, but then quickly got back into the vehicle, closed the door, and accelerated his car in reverse, forcing Deputy Morrow to jump back inside the patrol car to avoid being hit by Ontha's oncoming vehicle. In contrast, a resident of the Greenland Drive Apartments, Bobbie Ann Harris, testified that she did not observe either Ontha or the deputies exit their vehicles at any time during this incident.

While still driving in reverse, Ontha pulled out of the parking lot and turned left into the eastbound lane of Greenland Drive, as though he intended to travel down the

road in reverse in a westerly direction.  In pursuit of Ontha's vehicle, Deputy Emslie also drove his patrol car out onto Greenland Drive.  According to Deputy Emslie, he did so by traveling in reverse out of the parking lot and making a right turn in reverse, so that his patrol car was facing the front of Ontha's vehicle.  Two eyewitnesses, Ms. Harris and Gerald McElroy, have testified differently, however, stating that the patrol car was traveling forward, and not in reverse, as it emerged from the parking lot.

In Deputy Emslie's account of what transpired next, he anticipated that Tommy Ontha would continue to drive his car in reverse down Greenland Drive, so he put the patrol car in "Drive" and began accelerating in the direction of Ontha's vehicle.  As the patrol car picked up speed, however, Ontha suddenly stopped his car, and Deputy Emslie reacted by turning his steering wheel to the right and applying his brakes in an effort to avoid hitting Ontha's vehicle.  Upon narrowly avoiding an impact with Ontha's car, Deputy Emslie caught a brief glimpse of Ontha outside his vehicle as the patrol car skidded into a telephone pole.  It was only after hitting the telephone pole that Deputy Emslie became aware that Tommy Ontha had been struck by the patrol car.

Again, the testimony of eyewitness Gerald McElroy differs markedly from Deputy Emslie's recollection of this incident.  According to McElroy, shortly after Ontha backed his car onto Greenland Drive, and while the patrol car still remained in the parking lot, Ontha emerged from his vehicle and began traveling on foot.  McElroy testified that the patrol car — moving forward and not in reverse — pulled out of the parking lot,

5

maneuvered slowly around Ontha's vehicle, and then began to accelerate. As the police car reached a speed of perhaps five to fifteen miles per hour, it caught up to and struck Ontha as he was running away. In McElroy's view, it appeared that the patrol car was "chasing" Ontha, seemingly making no effort to brake or steer away before striking him. (McElroy Dep. at 47, 108-10, J.A. at 363, 369-71.) As the police car made contact with Ontha, McElroy heard the vehicle's brakes and saw it slide into a telephone pole, with Ontha pinned between the hood of the car and the pole. In all, McElroy estimated that about six or seven seconds passed between the time that the patrol car left the parking lot and the time that it struck Ontha. (*Id.* at 40-41, J.A. at 356-57.)

Deputy Emslie was injured in the collision with the telephone pole and remained in the patrol car. Deputy Morrow, however, exited the car and approached Ontha, discovering that he was still alive and conscious, but that he was moaning and evidently in considerable pain. According to eyewitness Bobbie Ann Harris, the deputy who emerged from the patrol car took Ontha by the collar and pulled him onto to the grass by the side of the road, with Ontha moaning in pain and the deputy reportedly saying, "Boy, can't you speak English?" (Harris Dep. at 17-19, J.A. at 291-93.) After receiving emergency medical treatment at the scene, Ontha was taken by ambulance to the Vanderbilt University Medical Center, where he died about three hours later.

## B.     Procedural Background

Plaintiffs/Appellees Bountyner and Naly Ontha, the parents of Tommy Ontha,

commenced this action on March 17, 2004 in the United States District Court for the Middle District of Tennessee, asserting federal claims under 42 U.S.C. § 1983 against Rutherford County, Sheriff Truman L. Jones, Jr., and Sheriff's Deputies Emslie and Morrow, as well as state-law claims against Deputies Emslie and Morrow. Following a period of discovery, Defendants moved for summary judgment in their favor, based in part upon their contention that the individual defendants were shielded from liability under § 1983 by the doctrine of qualified immunity.

The district court denied Defendants' motion in an order dated August 23, 2005. (*See* District Court 8/23/2005 Order, J.A. at 396-99.) As to the individual Defendants' appeal to qualified immunity, the court found that issues of material fact precluded an award of summary judgment on this ground. (*See id.* at 2-3, J.A. at 397-98.) The court further concluded that the evidence was sufficient to sustain a § 1983 claim against Rutherford County, and that, in light of the County's continued presence as a party, any § 1983 claims against the remaining Defendants in their official capacities should be dismissed. (*See id.* at 3, J.A. at 398.)[1] Defendants Jones and Morrow now appeal, asserting that the district court erred in denying their claim of qualified immunity.

---

[1] In response to Defendants' subsequent motion for reconsideration, the district court largely adhered to this ruling, but agreed that no punitive damages could be recovered from the County.

7

## III. ANALYSIS

### A. The Court Has Jurisdiction over This Appeal.

Before turning to the merits, we first must satisfy ourselves of our power to consider the issues raised by Sheriff Jones and Deputy Sheriff Morrow in this interlocutory appeal. *See Crockett v. Cumberland College,* 316 F.3d 571, 577 (6th Cir. 2003). Although interlocutory appeals "are the exception, not the rule," *Johnson v. Jones,* 515 U.S. 304, 309, 115 S. Ct. 2151, 2154 (1995), we have recognized that "a denial of summary judgment based on a legal determination that qualified immunity is inappropriate is immediately appealable as a collateral order." *Crockett,* 316 F.3d at 578. In this case, then, we have jurisdiction to the extent that the district court's denial of qualified immunity "turns on an issue of law," but not "insofar as [the district court's] order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Sheets v. Mullins,* 287 F.3d 581, 585 (6th Cir. 2002) (internal quotation marks and citations omitted).

Ordinarily, we expect a defendant to expedite our jurisdictional inquiry by "conced[ing] to the facts as alleged by the plaintiff and discuss[ing] only the legal issues raised by the case." *Sheets,* 287 F.3d at 585. Here, unfortunately, the recitation of facts in Defendants' initial brief on appeal cites exclusively to Defendants' own affidavits, without even acknowledging the existence of eyewitness testimony that contradicts Defendants' account in certain respects. Since the district court cited this eyewitness

8

testimony in determining that issues of fact precluded an award of qualified immunity, it would appear that our jurisdiction over this appeal is open to serious question.

Upon careful review of the parties' briefs and the record, however, we conclude that Defendants have identified issues of law that are suitable for resolution on interlocutory appeal. Initially, we note that we are not bound by the district court's characterization of its ruling as resting upon the existence of issues of fact. *See Estate of Carter v. City of Detroit,* 408 F.3d 305, 309 (6th Cir. 2005); *Dickerson v. McClellan,* 101 F.3d 1151, 1156-57 (6th Cir. 1996). Rather, we may still reach and decide "purely legal question[s]" bearing upon Defendants' entitlement to qualified immunity, so long as the factual disputes noted by the district court are "immaterial" to this determination. *Dickerson,* 101 F.3d at 1157; *see also Estate of Carter,* 408 F.3d at 310 (explaining that we may disregard a defendant's "impermissible arguments regarding disputes of fact" so long as the defendant also raises questions of law). To be sure, Defendants' initial brief on appeal is not as helpful as it could have been in explaining why the issues of fact identified by the district court are not material to the questions of law they seek to present for our consideration. Defendants have ameliorated this concern in their reply brief, however, supplying an overdue concession that there are disputed facts in the record but arguing that these disputes are immaterial to their entitlement to qualified immunity. Under these circumstances, we are satisfied that we may inquire whether, viewing the record in a light most favorable to Plaintiffs, the district court properly denied summary

judgment to Defendants on grounds of qualified immunity.

**B.** **The Standards Governing Our Qualified Immunity Inquiry**

Under familiar principles, government officials such as the Defendants/Appellants here, Sheriff Jones and Deputy Sheriff Morrow, are shielded from liability for damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). This qualified immunity inquiry entails two steps. As a "threshold question," we must ask whether the facts, viewed in a light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); *see also Burchett v. Kiefer,* 310 F.3d 937, 942 (6th Cir. 2002). If so, "the next, sequential step is to ask whether the right was clearly established" — that is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier,* 533 U.S. at 201-02, 121 S. Ct. at 2156 (internal quotation marks and citation omitted); *see also Burchett,* 310 F.3d at 942. We review *de novo* the district court's denial of Defendants' motion for summary judgment on the ground of qualified immunity. *Dickerson,* 101 F.3d at 1157.

**C.** **Sheriff Jones Is Entitled to Qualified Immunity as to the Claims Asserted Against Him in His Individual Capacity.**

Turning first to Plaintiffs' § 1983 claims against Sheriff Jones in his individual capacity, all are agreed that Sheriff Jones had no direct personal involvement in the

10

events surrounding the death of Tommy Ontha on March 18, 2003. Rather, Plaintiffs' claims against the sheriff may go forward, if at all, only under a theory of supervisory liability. In his present appeal, Sheriff Jones argues that Plaintiffs have failed to muster sufficient evidence to meet this stringent standard of liability. We agree.

We have explained that "§ 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied,* 530 U.S. 1264 (2000). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (internal quotation marks and citation omitted). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." 199 F.3d at 300 (internal quotation marks and citation omitted).

To the extent that Plaintiffs even assert that this standard of supervisory liability can be met here,[2] they evidently contend that Sheriff Jones implicitly authorized the alleged misconduct of Deputies Emslie and Morrow by failing to properly train these deputies regarding the appropriate use of force and, more particularly, the inappropriateness of using a patrol car to strike or seize an individual. As Plaintiffs point

---

[2]Notably, after citing the correct standards for the imposition of supervisory liability, Plaintiffs then assert in their brief on appeal that "Sheriff Jones should remain as a Defendant *in his official capacity*." (Plaintiffs/Appellees' Br. at 33 (emphasis added).)

11

out, Sheriff Jones acknowledged in his affidavit that the Rutherford County Sheriff's Office "does not have a written policy specifically prohibiting" the use of a patrol car to strike a person who is fleeing on foot. (Jones Aff. at ¶ 6, J.A. at 121.) Plaintiffs posit that this lack of training served as implicit authorization of or knowing acquiescence in Deputy Emslie's allegedly inappropriate use of his patrol car to chase and strike Tommy Ontha as he attempted to flee.

Yet, to establish supervisory liability, it is not enough to point after the fact to a particular sort of training which, if provided, might have prevented the harm suffered in a given case. Rather, such liability attaches only if a constitutional violation is "part of a pattern" of misconduct, or "where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to occur." *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.) (citations omitted), *cert. denied,* 459 U.S. 833 (1982). Only in such circumstances can it be said that a supervisor's liability rests upon "active unconstitutional behavior," as opposed to "a mere failure to act." *Shehee,* 199 F.3d at 300 (internal quotation marks and citation omitted).

In this case, Plaintiffs do not contend that Deputy Emslie's purported misuse of his patrol car was part of a pattern of comparable violations, as opposed to an isolated occurrence. Neither have Plaintiffs suggested any basis for us to conclude that the tragic

12

events of this case were an "almost inevitable" or "substantially certain" byproduct of a lack of training as to the proper operation of a patrol car when pursuing an individual traveling on foot. Rather, Sheriff Jones states without contradiction that "we have never had an instance where a Rutherford County Sheriff's deputy intentionally struck a person with his or her patrol car," and that he is "not aware of a problem or trend in the law enforcement community regarding law enforcement officers using their vehicles to intentionally strike fleeing suspects or other persons on foot." (Jones Aff. at ¶ 6, J.A. at 121.) Under this record, we find as a matter of law that Plaintiffs cannot sustain their § 1983 claims against Sheriff Jones in his individual capacity.[3]

### D. Deputy Morrow Is Entitled to Qualified Immunity as to One, But Not Both, of the § 1983 Claims Asserted Against Him.

Turning next to Plaintiffs' § 1983 claims against Deputy Sheriff Morrow, there is, once again, no dispute that Deputy Morrow was not driving the patrol car that struck Tommy Ontha, but was merely a passenger in this vehicle. Deputy Morrow further states, without contradiction, that he and Deputy Emslie did not discuss or debate any

---

[3]As noted earlier, Plaintiffs argue that Sheriff Jones "should remain as a Defendant in his official capacity," (Plaintiffs/Appellees' Br. at 33), and they cite the district court as having so ruled. Yet, the district court held precisely the opposite in its August 23, 2005 order, stating that "with the County as a Defendant, the individual Defendants should remain in this action only in their individual capacities." (8/23/2005 Order at 3, J.A. at 398.) Just as we cannot consider on interlocutory appeal whether the district court properly allowed Plaintiffs' § 1983 claims against Rutherford County to go forward, *see Crockett, supra,* 316 F.3d at 578-79, we also lack jurisdiction to consider whether the district court properly dismissed the § 1983 claims against Sheriff Jones in his official capacity. Accordingly, we must decline Plaintiffs' invitation to weigh in on this issue.

13

possible courses of action as Deputy Emslie drove the patrol car out of the Greenland Drive Apartments parking lot and began to pursue Ontha. Under these circumstances, Deputy Morrow argues that he cannot be held liable for any excessive force that Deputy Emslie might have inflicted through his operation of the patrol car. We agree, but find that Deputy Morrow remains subject to liability for the excessive force he allegedly employed as Ontha lay on the ground after being struck by the patrol car.

As Defendants acknowledge, and as the district court recognized, a patrol car can be an instrument of force through which an individual is "seized" within the meaning of the Fourth Amendment. *See, e.g., Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S. Ct. 1378, 1381 (1989); *Galas v. McKee,* 801 F.2d 200, 203 (6th Cir. 1986); *Harris v. Coweta County,* 433 F.3d 807, 812-13 (11th Cir. 2005), *cert. granted,* 127 S. Ct. 468 (2006). Accordingly, the degree of force used to effect such a seizure must be reasonable. *See Graham v. Connor,* 490 U.S. 386, 395-96, 109 S. Ct. 1865, 1871 (1989); *Burchett,* 310 F.3d at 944. This is precisely the theory of liability Plaintiffs have advanced against Deputy Emslie in this case — namely, that he deliberately and unreasonably used a police car to pursue and strike Tommy Ontha as he was fleeing on foot.

Plaintiffs' theory of liability as to Deputy Morrow necessarily rests upon a different legal footing. In order to hold Deputy Morrow liable for the excessive force allegedly inflicted upon Tommy Ontha by the patrol car, Plaintiffs "must prove that he

14

(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997). As a passenger in the patrol car, Deputy Morrow did not actively participate in the alleged use of the vehicle as an instrument of excessive force, and Plaintiffs do not contend otherwise. Neither is there any evidence that Deputy Morrow exercised any supervisory authority over Deputy Emslie; to the contrary, it appears that Deputy Emslie possessed a degree of authority over Deputy Morrow.

Accordingly, Deputy Morrow can be held liable for the force inflicted by the patrol car only if he owed Tommy Ontha a duty of protection against the use of such force. "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner,* 119 F.3d at 429. Citing the account of eyewitness Gerald McElroy, Plaintiffs argue that this standard is satisfied here, where Deputy Morrow purportedly had a six- or seven-second window of opportunity to perceive that Deputy Emslie was aiming and accelerating the patrol car at Tommy Ontha and to take action to thwart this allegedly unlawful pursuit.

We cannot agree. To be sure, from the eyewitness testimony that Deputy Emslie slowly maneuvered the patrol car around Ontha's vehicle and then accelerated toward

15

Ontha as he fled on foot, one could reasonably conclude that Deputy Emslie's actions were deliberate rather than accidental. But further inferences are required to charge Deputy Morrow with liability for this sequence of events. In particular, there must be a basis for concluding (i) that Deputy Morrow perceived that Deputy Emslie had embarked on an effort to inflict force upon Ontha with the patrol car, and (ii) that he had the means and opportunity to thwart this effort. Moreover, in order to avert the harm to Ontha, Deputy Morrow would have had to **both** glean the nature of Deputy Emslie's actions **and** decide upon and implement preventative measures within a short time span of six to seven seconds.

We are unaware of any case law, nor have Plaintiffs cited any, that has recognized a duty of protection under such circumstances. To the contrary, the courts have been unwilling to impose a duty to intervene where, as here, an entire incident unfolds "in a matter of seconds." *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 207 n.3 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991); *see also O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2d Cir. 1988) (finding that the three blows suffered by the plaintiff "were struck in such rapid succession that [a nearby police officer] had no realistic opportunity to attempt to prevent them," and that "[t]his was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); *Fultz v. Whittaker,* 261 F. Supp.2d 767, 780 (W.D. Ky. 2003) (declining to hold an officer liable for a failure to intervene where "[e]veryone

16

agrees that the events happened in a matter of seconds"); *Todhunter v. Swan,* No. 05-74934, 2006 WL 3454796, at \*7 (E.D. Mich. Nov. 29, 2006) (finding that a "rapid sequence" of events "afforded [the defendant sheriff's deputy] no opportunity to intervene"). Where we have recognized such a duty, in contrast, the underlying episode of excessive force has spanned a sufficient period of time for a nearby defendant to both perceive what was happening and intercede to stop it. *See, e.g., Durham v. Nu'Man,* 97 F.3d 862, 868 (6th Cir. 1996) (reversing an award of summary judgment in a case where a beating "lasted approximately ten minutes" and the defendant nurse "watched the beating unfold on her monitor from the nurse's station, and then from the doorway of . . . the room where the beating took place"), *cert. denied,* 520 U.S. 1157 (1997).

Under this case law, even if Deputy Emslie had announced his allegedly malevolent intentions as he began to accelerate the patrol car, it is doubtful that Deputy Morrow could be found to have had a realistic opportunity to intervene and prevent harm from befalling Tommy Ontha. Within a span of a few short seconds, Deputy Morrow would have had to identify and employ some reasonable (and safe) means of dissuading or otherwise preventing Deputy Emslie from steering the patrol car toward a fleeing suspect. Given the inherent dangers of interfering with the driver of a moving vehicle, this alone would have been a daunting task. Yet, because Deputy Emslie did ***not*** announce his intentions, Deputy Morrow ***also*** would have been required, in this same short time span, to ascertain that his fellow deputy was not merely pursuing a fleeing

17

suspect in a reasonable and appropriate fashion, but instead was intentionally or recklessly pursuing a course of action that was likely to inflict harm upon Tommy Ontha unless he interceded. We are unwilling, under these circumstances, to impose upon Deputy Morrow the duty to intervene and protect Tommy Ontha from the excessive force that Deputy Emslie allegedly inflicted with the patrol car.

Moreover, given the absence of any case law that has imposed a duty of protection under even roughly analogous circumstances, we readily conclude that Deputy Morrow's failure to intervene did not violate clearly established law. As explained, the pertinent decisions make it clear that a police officer cannot stand idly by if he observes the use of excessive force and has the means and opportunity to prevent it. *See Turner,* 119 F.3d at 425; *Durham,* 97 F.3d at 868. Yet, none of these rulings can be read as requiring that a police officer, in a matter of seconds, ***both*** determine that a fellow officer is about to use excessive force ***and*** identify a means to prevent it. Accordingly, at the time of the incident at issue here, it would not have been evident to a reasonable officer in Defendant Morrow's position that he was obligated to taken action to prevent Deputy Emslie from allegedly using the patrol car to inflict excessive force upon Tommy Ontha. It follows that Defendant Morrow is entitled to qualified immunity as to Plaintiffs' claim that he breached a duty of protection.

Nonetheless, Plaintiffs have identified a second possible basis for charging Deputy Morrow with liability under § 1983. In particular, they cite the testimony of

18

eyewitness Bobbie Ann Harris that, after Tommy Ontha had been struck by the police car, a sheriff's deputy emerged from the car, took Ontha by the collar, and pulled him onto to the grass by the side of the road, with Ontha moaning in pain and the deputy reportedly saying, "Boy, can't you speak English?" (Harris Dep. at 17-19, J.A. at 291-93.) Because Ontha had been thoroughly neutralized by the impact of the patrol car, and presumably did not pose any threat to the deputies or anyone else on the scene, Plaintiffs contend that any use of force by Deputy Morrow to drag him to the curb was excessive under the circumstances. *See Phelps v. Coy,* 286 F.3d 295, 301-02 (6th Cir. 2002), *cert. denied,* 537 U.S. 1104 (2003).

Beyond denying that this incident occurred, Deputy Morrow argues that the "only reasonable inference" from the eyewitness's testimony is that he "was pulling [Ontha] out of the roadway for [his own] safety." (Defendants/Appellants' Reply Br. at 15.) Yet, this is hardly the *only* reasonable inference that could be drawn from this evidence, particularly where there is no indication that Ontha faced any danger if he had been left at the side of the road until emergency medical personnel arrived at the scene. Moreover, while Defendants claim that Plaintiffs have failed to produce the requisite evidence of physical injury resulting from Deputy Morrow's actions, *see Lyons v. City of Xenia,* 417 F.3d 565, 575-76 (6th Cir. 2005), the eyewitness who recounted this incident testified that Tommy Ontha "holler[ed]" and "moan[ed]" in pain as the sheriff's deputy pulled him onto the grass. (Harris Dep. at 18, J.A. at 292.) These outstanding issues of material

19

fact preclude us from reviewing this aspect of the district court's denial of qualified immunity to Deputy Morrow.[4]

## IV. <u>CONCLUSION</u>

For the reasons set forth above, we reverse the district court's denial of qualified immunity to Defendant/Appellant Jones, affirm in part and reverse in part the district court's denial of qualified immunity to Defendant/Appellant Morrow, and remand for further proceedings in accordance with this opinion.

---

[4]In addition to challenging the district court's denial of qualified immunity, Defendants Jones and Morrow also contend that the state-law claims asserted against them are subject to dismissal under the Tennessee Governmental Tort Liability Act ("TGTLA"). In Defendants' view, a provision of the TGTLA, Tenn. Code Ann. § 29-20-307, mandates that the Tennessee circuit courts have exclusive jurisdiction over these claims, such that a federal district court should — and perhaps even must — decline to exercise supplemental jurisdiction over such claims. *See Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000) (finding that, through this provision, "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts"). *But cf. Brown v. City of Memphis,* 440 F. Supp.2d 868, 876-78 (W.D. Tenn. 2006) (opining that this provision merely factors into, but does not control, a federal district court's discretionary decision whether to exercise supplemental jurisdiction over such claims).

We decline to reach this issue in this interlocutory appeal. Initially, we note the absence of any indication in Plaintiffs' complaint that they have asserted any state-law claims against Sheriff Jones. As to the question whether the district court should exercise supplemental jurisdiction over the state-law claims asserted against Deputy Morrow, we do not view this issue as sufficiently related to or inextricably intertwined with the issue over which we unquestionably have jurisdiction — namely, the availability of qualified immunity — to warrant the exercise of pendent appellate jurisdiction. *See Summers v. Leis,* 368 F.3d 881, 889-90 (6th Cir. 2004).