NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0258n.06

**09-1775**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 26, 2010**
LEONARD GREEN, Clerk

RUSHANDA MIZE,                                )
                                              )
    Plaintiff-Appellant,                      )
                                              )
v.                                            )    ON APPEAL FROM THE UNITED
                                              )    STATES DISTRICT COURT FOR THE
RALPH TEDFORD and the CITY OF FLINT,          )    EASTERN DISTRICT OF MICHIGAN
                                              )

    Defendants-Appellees.

Before:  GUY, BOGGS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.  The district court awarded Rushanda Mize $350,000 on her § 1983 sexual-assault claim against former police officer Ralph Tedford but found no liability on the part of the City of Flint.  Mize appeals, arguing that the damages against Tedford should have included punitive damages and that the city's failure to supervise Tedford caused the assault.  We affirm.

I.

In the early morning of September 2, 2007, Tedford stopped Mize when her car swerved across the lane.  Tedford drove Mize to an empty police mini-station, telling her that he could arrest her but also telling her "how sexy [she] looked and all of that stuff."  R.26-3 27.  Then, according to Mize, Tedford forcibly raped her.

Later that day, Mize went to the hospital, where a social worker called the police to report the rape. Two detectives came to the hospital to talk with Mize, who identified Tedford from a book of photographs. That afternoon, the police gathered evidence at the mini-station where the incident had occurred, and early the next morning two Flint Police officers and one Michigan State Police officer interviewed Tedford. Tedford painted a somewhat more consensual picture of the encounter but did not deny that he inappropriately had sex with Mize. At the conclusion of the interview, the officers placed Tedford on administrative leave, taking his badge, gun and cruiser. Tedford later resigned and pleaded guilty to willful neglect of duty, receiving a sentence of 60 days in jail.

In February 2008, Mize filed this § 1983 lawsuit against Tedford and the City of Flint in federal court, alleging that Tedford's rape violated her civil rights and that the city's policies caused the rape. Although Mize served Tedford with her complaint in March 2008, and although she deposed him in April 2009, Tedford failed to enter an appearance or otherwise defend the case. The court issued a default judgment against him in the amount of $350,000. The court granted summary judgment in favor of the city, holding that Mize could not establish "a constitutionally deficient failure to supervise" Tedford. Mize appeals.

II.

Mize first argues that the district court should have broken down the judgment into punitive and compensatory damages. Although courts may award punitive damages under § 1983, *see Smith*

*v. Wade*, 461 U.S. 30, 35 (1983), she notes that the court's judgment simply states "$350,000," without specifying how much of the sum, if any, constitutes punitive damages.

The court's award of damages, however, is consistent with Mize's generally phrased requests. Although she briefly raised the possibility of "punitive and exemplary damages" in her complaint, R.1 at 7, she never mentioned them again. Her motion for default judgment and the accompanying brief both ended with an entreaty for "a default judgment . . . in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000)," without specifying the type of damages sought. R.28 at 2, 5. Neither document said anything about punitive damages, and the brief focused on the typical grounds for compensatory, not punitive, damages, describing the harm to the plaintiff rather than the need for punishing the defendant or deterring similar wrongdoing in the future. *See Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) (explaining the difference). At the hearing on the motion, Mize's counsel also focused on the harm to the plaintiff instead of the conduct of the defendant. When the court asked for an explanation of the damages she requested, her counsel did not seek punitives but simply responded, "[w]ell, it's a request, Your Honor. . . . [W]e are not talking . . . in terms of hard damages. There is nothing, nothing I think that can really be black-boarded." R.47 at 34–35.

We know of no precedent, and neither apparently does Mize, requiring a court independently to award punitive damages even when the plaintiff does not ask for them and does not present a theory for awarding them. We see no reason to invent any such rule now.

To the extent Mize means to argue that the district court should have given her *more* damages, whether compensatory or punitive, we disagree. After accounting for the facts of this case and various comparable verdicts, the district court reached a number of $350,000, roughly in the middle of the range of the other verdicts it examined. The court's damages were lower than the amount Mize requested and below the amount in several cases Mize has subsequently found (Mize presented no examples of comparable damage awards to the district court), but that does not make the award erroneous and certainly not *clearly* erroneous, the standard for reversal. *See Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 485 (6th Cir. 2005). We affirm the default judgment.

III.

Mize separately contests the district court's conclusion that the City of Flint bears no liability for Tedford's wrong. To survive a motion for summary judgment on municipal liability, Mize had to show that the evidence would allow a reasonable jury to conclude that Mize suffered a constitutional injury and that the city's "policy or custom . . . inflict[ed] the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). She cannot meet this last requirement.

Far from "inflict[ing]" Tedford's assault on Mize, the city's police department forbade such conduct. The internal investigation of the incident found that Tedford had violated no fewer than fourteen departmental policies. Tedford himself understood that he "would [get] in trouble" if caught. R.31-3 at 68. And the department promptly removed him from duty, forced him to resign and obtained a commitment from him that he would never serve in law enforcement again.

Acknowledging that the department did not encourage or condone Tedford's behavior, Mize maintains that the department's lack of supervision allowed the incident to happen. This "failure to supervise" theory of municipal liability is a rare one. Most agree that it exists and some allege they have seen it, but few actual specimens have been proved. It appears to relate to two more common theories of municipal liability: an inadequate-training theory, *see, e.g.*, *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006), or an "acquiesce[nce]" theory, *e.g.*, *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246, 1248 (6th Cir. 1989). We need not develop a precise classification, however, because Mize's claim against the city, whatever its form, cannot succeed.

However characterized, Mize's claim must meet the "rigorous standards of culpability and causation" that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its "facially lawful" policies. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405, 407 (1997). She must show that the city acted with "deliberate indifference" to the risk of sexual assault and that its deliberate indifference was the "moving force" behind the assault. *Id.* at 404, 407; *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). To put it another way, she must show that the relevant policymaker, whether the police chief or the mayor, disregarded a "known or obvious consequence of his action," which caused the constitutional violation. *Bryan County*, 520 U.S. at 404, 410.

No reasonable jury could find that Tedford's superiors were deliberately indifferent to the danger that he might rape someone like Mize. Tedford had no history of misconduct that gave the

department notice of the risks of putting him on patrol duty. He had served the department for eighteen years, all the while maintaining a good reputation and a clean record. The Flint Police Department did not have a pattern of sexual assaults by its officers, as the preceding two decades saw no more than a handful of sexual-assault allegations against its officers. And uncontested evidence showed that the department investigated every allegation and, as in Tedford's case, fired the officer in question if it found substance behind the allegation. What we said in a prior case applies with equal force here:

> There is no basis to conclude on this record . . . that there was a "high degree of predictability" that [Tedford] or any other employee was likely to rape anyone, especially considering that [Tedford's] background does not reveal any inclination to assault another sexually. The intentional, violent act that a [police officer] performed far outside the scope of his duties cannot be something that was "obvious" to occur.

*Doe v. Magoffin County Fiscal Court*, 174 F. App'x 962, 970 (6th Cir. 2006) (quoting *Bryan County*, 520 U.S. at 409–10).

Mize responds that the department did not supervise Tedford closely and that, had the department given him less free rein, he might not have had the opportunity to rape her. Maybe so. But opportunity alone, without reason to suspect that it will lead to a constitutional violation, does not establish deliberate indifference. At best, it establishes negligence, which "will not suffice." *Bryan County*, 520 U.S. at 407; *see id.* at 421 (Souter, J., dissenting) ("The Court is certainly correct in emphasizing the need to show more than mere negligence."). The Supreme Court has required the higher standard precisely because of cases like this one, recognizing that "[i]n virtually every

instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 392. To allow such claims, without more, would create the kind of "*de facto respondeat superior* liability" that the Court has made clear does not exist in this area. *Id.*

Mize adds that her expert concluded that the department "ratifi[ed] . . . misconduct" by Tedford and the members of his unit. Mize Br. at 27. Yet neither Mize nor her expert specify this "misconduct," and the record turns up little. Mize notes that Tedford often failed to check in with police dispatch as required and did not even work during some shifts. For example, the investigators, in following up on Mize's rape accusations, found him at home when he was supposed to be working. On a broader scale, Tedford's supervisor remembered four to five complaints made against Tedford's fellow inspectors in his unit, ranging from "parking in a wrong spot behind the police station" to having "too many cars at a restaurant." R.30-4 at 48. Perhaps these facts suggest that the department "ratifi[ed]" skipping work or parking improperly, but none suggest a danger of rape, much less ratification of such egregious conduct. On this record, a jury could not reasonably conclude that this admittedly egregious assault stemmed from the city's deliberate indifference to Mize's constitutional rights.

IV.

For these reasons, we affirm.