NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0278n.06

Case No. 13-1915

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 15, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSHUA AMERSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| WATERFORD TOWNSHIP, et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: KEITH, SILER, and ROGERS, Circuit Judges.

**SILER, Circuit Judge.** In this case, we determine whether Plaintiff Joshua Amerson presented enough evidence to support his civil rights claims of excessive force against Defendants, Officers Michael Stechly and Brian Mahoney. We must also decide whether Amerson showed that Defendant Waterford Township, Stechly and Mahoney's employer, failed to train and supervise its employees in such a way as to cause his injuries. The district court determined that Amerson failed to meet his evidentiary burden at the summary judgment stage as to these claims and dismissed his case. For the reasons that follow, we AFFIRM in part, REVERSE in part, and REMAND the excessive force claim against Stechly for further proceedings.

**I.**

In 2009, Amerson and his cousin, Jermaine Hathaway, burglarized a residence. Waterford Township's police department issued a dispatch reporting a possible home invasion in progress. Stechly, driving his patrol car, noticed Amerson and Hathaway walking down the street in the general area of the break-in. When he tried to speak with them, they ran away. Stechly and other law enforcement personnel gave chase. After a short time, Amerson and Hathaway surrendered. At the prompting of the police officers, the two lay on the ground on their stomachs. Officers Scott Sawyer and Ronald Wallace secured Hathaway, while Stechly and Mahoney handled Amerson, who offered no further resistance to the police officers.

The parties disagree as to what happened next. Amerson asserts that after Stechly and Mahoney handcuffed him and while he was still on the ground, Stechly punched him in the face with a closed fist. According to Amerson, Stechly then stood up and kicked him in the right temple, while Mahoney stood idly nearby. Stechly denies that any such contact took place. After Amerson was handcuffed, Sawyer placed Amerson in his patrol car, and when his car got caught in the snow, he transferred Amerson to Wallace's patrol car for transportation to the police station. However, Amerson does not recall any interruptions in his transport.

After the incident, Amerson began to suffer from seizures. He was admitted to the hospital on four separate occasions in 2009 for seizures. Dr. Das L. Kareti, a neurologist, evaluated Amerson between January and April of 2011. Dr. Kareti noted in his records that Amerson had been suffering from seizures for two years, starting around the time he claimed to have been kicked in the head, and found the presence of an irritative process in the right hemisphere of the brain that could have caused the seizures.

Amerson attributes the seizures to the use of force applied during his arrest. Accordingly, he brought suit under 42 U.S.C. § 1983, against a number of individually named officers and Waterford Township. Amerson alleged, *inter alia*, that the individual defendants violated his Fourth Amendment right to be free from excessive force and that Waterford Township failed to adequately train and supervise its police officers to prevent the violation of his constitutional rights. After the district court dismissed the individual officers except Stechly and Mahoney, it granted summary judgment on all claims in favor of Waterford Township, Stechly, and Mahoney.[1]

## II.

We review *de novo* an order granting summary judgment and use the same test for summary judgment that the district court employs under Federal Rule of Civil Procedure 56(c). *Hansard v. Barrett*, 980 F.2d 1059, 1061 (6th Cir. 1992). In reviewing a summary judgment grant, we must "view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant." *Smith v. Cnty. of Lenawee*, 600 F.3d 686, 690 (6th Cir. 2010). However, the Supreme Court has instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[1] The district court never discussed qualified immunity in its decision, nor was it fully briefed before the district court or in this appeal. Accordingly, we need not address the issue in this opinion.

**A.**

Amerson contends that Stechly directly and Mahoney indirectly employed excessive force upon him in the course of his arrest in violation of the Fourth Amendment.[2] Under the Fourth Amendment, the Constitution protects against the government's infliction of excessive force "in the context of an arrest or an investigatory stop of a free citizen." *Graham v. Connor*, 490 U.S. 386, 394 (1989). We first address the claim against Stechly.

**1.**

Amerson posits that while he was lying on his stomach with his hands cuffed behind his back and offering no resistance, Stechly punched him in the head with a closed fist and then kicked him in the right temple for no apparent reason. If the jury believed Amerson's factual assertions, Defendants acknowledge that he would likely prevail on his claim against Stechly for excessive force. However, Stechly contends that the record blatantly contradicts Amerson's factual assertions. The district court seemed to agree with Stechly, finding that Amerson failed to introduce evidence that Stechly was involved in the alleged constitutional violations.

The summary judgment standard allows courts to rely on allegations supported by facts in the record to determine whether triable issues remain. *See Anderson v. Liberty Lobby, Inc.*,

---

[2] Upon appeal, Amerson's version of events emphasizes Stechly's unwarranted abusive contact and Mahoney's failure to intervene. However, at oral argument, Amerson maintained that because the evidence is ambiguous about which officer acted as the aggressor and the idler, Mahoney could have inflicted the excessive force while Stechly refused to intercede. A review of the record and Amerson's briefs filed in this court and below shows that Amerson presented virtually no evidence that Mahoney personally inflicted the physical harm upon Amerson or that Stechly stood by idly. Without any evidentiary support for these claims, it is clear that this theory of the case could not survive summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). The district court glossed over the factual distinctions between the two stories that Amerson could theoretically present at trial, generally stating that neither Mahoney nor Stechly employed excessive force or witnessed its application. Despite this curt treatment, summary judgment was proper as to Amerson's claims of Mahoney's excessive force and Stechly's failure to intervene.

477 U.S. 242, 248-50 (1986). The evidence supporting Amerson's story is summarized as follows: 1) Amerson offered no resistance once he surrendered and had been handcuffed by Stechly and Mahoney. Stechly and Mahoney affirmed they were the two officers that physically contacted Amerson while he lay on the ground. Stechly asserts that he alone handcuffed Amerson; Mahoney claims that Stechly issued orders to Amerson and he at least assisted with the handcuffing.[3] 2) Hathaway and Amerson testified that a police officer inflicted two blows to Amerson's head. While Hathaway could not identify the offending police officer, Amerson stated that the person who handcuffed him and delivered the abuse was five feet-eight inches tall with a medium build, an accurate portrayal of Stechly, who described himself as five feet-nine inches tall and 160 pounds at the time of the incident.[4] 3) Medical records show that Amerson suffers from seizures, which began shortly after the time of the incident at issue.

Defendants counter that the record renders Amerson's version of events fiction, emphasizing two principal inconsistencies that discredit his assertions. First, in his complaint, Amerson stated that he was kicked multiple times in the head, but in his deposition, he related that the police officer punched him once in the head and kicked him once in the temple. Second, Amerson's description of his attacker is conflicting. He described the person who inflicted the excessive force as the same officer who drove him to the police station, but testimony shows that Sawyer and Wallace transported him to the police station. Amerson stated that the officer who stopped him and Hathaway when they walked away from the scene of the break-in, Stechly, was

---

[3] Mahoney cannot remember who actually clamped the handcuffs on Amerson's wrists.

[4] In further support of our holding that summary judgment was proper as to Mahoney on the direct excessive force claim, his build is quite different. Standing six feet-two inches tall and weighing around 250 pounds at the time of the incident, Mahoney does not match Amerson's description of the assaulting officer.

not the officer who punched and kicked him. At most, these inconsistencies cast doubt upon the efficacy of Amerson's story.

At the time of his complaint, Amerson could have remembered events less clearly, but upon reflection, after some discovery, and under the mandates of an oath, it is reasonable to believe that his recollection became more specific. *Cf. Leary v. Livingston Cnty.*, 528 F.3d 438, 444 (6th Cir. 2008) ("When a claimant's testimony contradicts the allegations in [the plaintiff's] complaint, we credit his later testimony."). As to his problem identifying his alleged attacker, the events as Amerson described could easily lead to misapprehension. Different officers participated in chasing him down until he surrendered, handcuffing him and placing him under arrest, and transporting him to the police station. That he could confuse some of the officers is neither surprising nor fatal to his case. While these and other more minor inconsistencies in Amerson's testimony call into question the veracity of his allegations, they do not utterly discredit his story, which is supported by record evidence beyond just his own testimony.[5] The Sixth Circuit "allow[s] cases to proceed to trial even though a party's evidence is inconsistent, because '[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence is prohibited.'" *Coble v. Cnty. of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011) (quoting *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010)). Most importantly, even aware of these contradictions, a reasonable jury could still believe Amerson's story.

Next, Defendants highlight the lack of evidence in the record showing that Amerson complained of his injury at the time of his arrest. Defendants argue that Amerson failed to report

---

[5] Defendants argue that the inconsistencies in Amerson's deposition and between his deposition and his complaint cannot create the issues of triable fact Amerson contends should overcome summary judgment. *See Leary*, 528 F.3d at 444. However, Amerson's inconsistencies do not generate the issues of material fact in this case; rather, the main issue for jury resolution remains whether Amerson endured the excessive force alleged at the hands of Stechly.

the alleged use of force at the Waterford Township Police Station, at the Oakland County Jail, or to the judge at his arraignment. Amerson testified that he did complain of a headache to a jail doctor but offers no evidence to substantiate this claim or otherwise undermine Defendants' contention as to his failure to report. However, "the absence of corroborating evidence . . . does not necessarily 'blatantly contradict' plaintiff's version of events." *Toner v. Village of Elkton*, 547 F. App'x 720, 724 (6th Cir. 2013). Resultantly, while Amerson's report of the incident at the time would have provided some additional evidence supporting his claim against Stechly, his failure to do so does not render his claim implausible.

Finally, Defendants argue that the booking photographs and interrogation video show no visible signs of injury–no swelling or bruising. Still, Amerson's medical records showing his proclivity for seizures beginning around the time the alleged incident took place could support a conclusion that the alleged excessive force led to his cranial injuries; the booking photographs and interrogation video only make Amerson's version of events less probable.

The blatantly contradictory standard is a difficult one to meet and requires opposing evidence that is largely irrefutable, as shown in *Scott v. Harris.* In that case, the record contained videotape evidence of the police chase in question which "so utterly discredited [the plaintiff's version of events] that no reasonable jury could have believed" them. 550 U.S. at 374-76, 380-81. However, it is often difficult to obtain a "blatantly contradictory" determination. *See, e.g.*, *Coble*, 634 F.3d at 869-70 (holding that despite an audio tape calling into question the plaintiff's story, the record did not blatantly contradict his testimony such that a jury could not find in his favor); *Carter v. City of Wyoming*, 294 F. App'x 990, 991-93 (6th Cir. 2009) (holding that a videotape and MRI at most cast doubt on the plaintiff's version of facts, but did not blatantly contradict them).

Here, in addition to his own deposition testimony, Amerson supports his allegations with deposition testimony from Hathaway and a number of officers and medical records. Unlike in *Scott v. Harris*, no videotape or other incontrovertible type of evidence wholly discounts Amerson's version of events. The record demonstrates that a genuine dispute exists as to whether Stechly deprived Amerson of his Fourth Amendment rights. Accordingly, Amerson's excessive force claim against Stechly should have survived summary judgment, and we reverse the district court's ruling to the contrary.

**2.**

Next, Amerson claims that because Mahoney stood nearby while Stechly punched and kicked Amerson in the head, Mahoney had a duty to intervene, and in failing to do so, Mahoney is liable for excessive force under § 1983. We have previously recognized an "inaction theory" of excessive-force liability. *See Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) ("[I]t is not necessary, in order to hold a police officer liable under § 1983, to demonstrate that the officer actively participated in striking a plaintiff.").

> Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that the excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

We applied the *Turner* test in a more recent opinion. In *Ontha v. Rutherford County, Tennessee*, 222 F. App'x 498 (6th Cir. 2007), a police officer drove a patrol car in pursuit of a wrongfully suspected criminal, while a second police officer assisted from the passenger seat. *Id.* at 500-501. Taking the facts as presented by the plaintiffs, in a matter of six to seven seconds, the driving police officer made the decision to chase down the suspect, who was

travelling on foot, and to strike him with his vehicle, a blow which eventually led to the suspect's death. *Id.* We determined that in order to hold the second police officer liable,

> there must be a basis for concluding (i) that [the second officer] perceived that [the primary officer] had embarked on an effort to inflict force upon [the suspect] with the patrol car, and (ii) that he had the means and opportunity to thwart this effort. Moreover, in order to avert the harm to [the suspect], [the second officer] would have had to **both** glean the nature of [the primary officer's] actions **and** decide upon and implement preventative measures within a short time span of six to seven seconds.

*Id.* at 506. Likewise, in the present case, Mahoney would have had to perceive that Stechly intended to apply excessive force upon Amerson, find an opportunity to thwart his effort, and develop a means to intercede. *See Turner*, 119 F.3d at 439.

Amerson cannot show that Mahoney's actions satisfy the *Turner* test. He presents no evidence showing that Mahoney knew or had reason to know of the impending excessive force or had the opportunity or means to intervene. Indeed, the span of time within which Mahoney should have perceived the excessive force and developed and implemented an intervention strategy could not have been more than a few seconds. Mahoney had no opportunity to prevent the alleged use of force, given that the alleged events took place quickly and without any forewarning. *Cf. Ontha*, 222 F. App'x at 506 (finding that "courts have been unwilling to impose a duty to intervene where, as here, an entire incident unfolds in a matter of seconds") (internal quotation marks and citation omitted). Precedent and the circumstances of this case show that Mahoney did not have a duty or the means to intervene under the *Turner* test. Accordingly, we affirm the district court's summary judgment grant on this claim.

**B.**

Finally, Amerson appeals the dismissal of his claims against Waterford Township for its alleged failure to train and supervise its employees. Generally speaking, plaintiffs are permitted to sue municipalities under § 1983 for executing a government policy or custom, "whether made

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that "inflicts the injury [for which] the government as an entity is responsible." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690, 694 (1978). The custom or policy must be the "moving force" behind the constitutional violation, *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), so the plaintiff needs to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted).

Because municipal liability under § 1983 cannot rely on a respondeat superior theory, *see Monell*, 436 U.S. at 694, Amerson brings two distinct claims impugning Waterford Township's alleged insufficiencies—one for failure to train and a second for failure to supervise. The district court found that "Amerson has not presented any . . . competent evidence with regard to . . . the municipality's deliberate indifference and a causal connection between the municipality's failure to train or supervise and the alleged constitutional violation." We agree.

**1.**

Beginning with the failure-to-train claim, the Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Proving deliberate indifference for failure to train "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005).

Amerson contends that Waterford Township failed to adequately train its police officers as to the proper use of force to apply during an arrest. In support of this argument, he asserts that

Waterford Township's non-lethal force policy has not been renewed since completion of field training; it has not offered training on when to intervene; and excessive-force training is not part of new field training. None of these assertions proves, however, that Waterford Township was deliberately indifferent to whether its officers applied the proper amount of force in effectuating arrests.

Waterford Township's failure to renew training on its non-lethal force policy does not suggest that it made a conscious decision to disregard known dangers. Amerson did not present any evidence of prior misconduct in the form of excessive force. He claims that Waterford Township should have known that the officers received inadequate training, because it included non-lethal force policy instruction in initial police officer training. This line of reasoning is misguided. That Waterford Township initially trained its officers in its non-lethal force policy does not show that it knew it needed to train in the same policy later, especially given the dearth of evidence illustrating that Waterford Township police officers had been charged with this type of misconduct in the past.

Amerson's allegation regarding a failure to train on when to intervene also does not survive § 1983 scrutiny. To sustain § 1983 municipal liability, Amerson must establish that the inadequate training was the moving force behind the violation of his constitutional rights. *See Dodson*, 454 U.S. at 326. However, as explained above, he has not shown here that any officer neglected his duty to intervene or failed to intervene in general. Therefore, a policy of failing to train officers on when to intervene cannot be the moving force behind Amerson's injury.

Finally, Amerson's assertion that excessive-force training was not part of new field training cannot possibly support municipal liability in this case. Amerson fails to connect the new officer training inadequacies to his constitutional injury in a manner supported by law,

because "it is not enough for [Amerson] to show that his injury could have been avoided if the officer had more or better training." *Mayo v. Macomb Cnty.*, 183 F.3d 554, 558 (6th Cir. 1999).

Consequently, Amerson has not shown that Waterford Township failed to train its officers in such a manner as to amount to deliberate indifference or to constitute the moving force behind his injuries. For these reasons, the district court correctly determined that Waterford Township was entitled to summary judgment on the failure-to-train claim.

**2.**

The failure-to-supervise claim meets the same fate. Few published opinions thoroughly discuss the law on failure-to-supervise claims, especially as distinct from failure-to-train claims. In a recent unpublished opinion, the Sixth Circuit explained that the

> "failure to supervise" theory of municipal liability is a rare one. Most agree that it exists and some allege they have seen it, but few actual specimens have been proved. It appears to relate to two more common theories of municipal liability: an inadequate-training theory or an acquiescence theory. . . . However characterized, [a claim for failure to supervise] must meet the rigorous standards of culpability and causation that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its facially lawful policies.

*Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010) (internal quotation marks and citations omitted). Similar to the failure-to-train inquiry outlined above, to sustain a failure-to-supervise claim, the plaintiff "must show that the city acted with 'deliberate indifference' to the risk of [the constitutional violation] and that its deliberate indifference was the 'moving force' behind the assault." *Id.*

Amerson argues that the failure to review and discipline police officers can give rise to a failure-to-supervise claim. Here, evidence from depositions shows that Waterford Township offered no annual or other type of review of its officers once they completed field training. Without review or monitoring, Amerson contends that Waterford Township allowed wrongful

conduct to go unchecked and permitted police officers to maintain inadequate knowledge as to the proper use of force. Amerson argues that without repercussions for misconduct, Waterford Township tolerated its officers' continuous violations of citizens' constitutional rights.

Amerson cites an unpublished Ohio district court opinion in support of his position that the failure to review or monitor employees can give rise to failure to supervise liability. In *Kammeyer v. City of Sharonville, Ohio*, No. 1:01-CV-00649, 2006 WL 1133241 (S.D. Ohio Apr. 27, 2006), four children of two deceased adults sought damages for the allegedly botched investigation into the murder of their parents. *Id.* at *1-2. The children sued the City of Sharonville, arguing that it failed to supervise its lead detective. *Id.* at *9. The court found a genuine dispute as to whether Sharonville acted with deliberate indifference toward the supervision of its lead detective, based on the following: supervisors only reviewed material from open criminal investigations when the lead detective deemed it necessary; the lead detective's personnel file, spanning 32 years, contained no performance evaluations; the families of the victims sent letters to the supervisors that should have put Sharonville on notice of its need to supervise the lead detective; and the entire command staff reported to Sharonville their dissatisfaction with the lead detective's "arrogance, failures in communication, and failures to follow through on his policing efforts." *Id.* at *11.

While plaintiffs may successfully bring claims against municipalities for failure to supervise where they do not conduct reviews or monitor the performance of their employees, plaintiffs must also show that the municipality lacks such a process out of deliberate indifference for the constitutional violations that may occur as a result. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2012) (analyzing the failure to train and supervise claims jointly). In *Kammeyer*, the evidence supporting the failure-to-supervise claim was much more extensive and

supported a finding of deliberate indifference. Here, Amerson only presents evidence that Waterford Township failed to conduct performance evaluations. This alone is not enough to show deliberate indifference, especially in the absence of evidence of a pattern of excessive force, a record of officers going unpunished for excessive force, or other circumstances tending to show that Waterford Township was aware or could have been aware that Stechly was prone to unwarranted application of force. The district court appropriately granted Waterford Township summary judgment on this claim.

### III.

In conclusion, the district court erred when it determined that Stechly was entitled to summary judgment on the excessive-force claim. Accordingly, we REVERSE this ruling and REMAND for further proceedings on that claim. In all other respects, we AFFIRM.