**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0383n.06

Case No. 15-6073

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 07, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TODD WHITE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICKY BELL, Warden, in his individual and | ) | ON APPEAL FROM THE UNITED |
| official capacities as the warden of Riverbend | ) | STATES DISTRICT COURT FOR |
| Maximum Security Institution, | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| Defendant, | ) | |
| | ) | |
| GAELAN DOSS; SEAN STEWART, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: BOGGS, CLAY, and GILMAN, Circuit Judges.

BOGGS, Circuit Judge. In this case involving claims of excessive force, the jury returned a verdict in favor of all defendants after prison officials gave contradictory testimony about the perpetrator's identity. The district court ordered a new trial on the ground that the verdict was against the weight of the evidence because it believed that the plaintiff's injuries required at least one defendant to be held liable. For the reasons discussed below, we reverse the decision to order a new trial, and we reinstate the first jury's verdict.

I

Plaintiff Todd White was formerly an inmate at the Riverbend Maximum Security Institution in Nashville, Tennessee. On May 31, 2010, White threw something at prison officers—White claims it was a tumbler full of coffee and water, but the officers claim it was urine and feces. The officers responded by forming a cell-extraction team to enter White's cell and remove any items that could be thrown at prison staff. Because he was facing the wall—and because the officers wore helmets with shields—White could not see their faces when they entered his cell. In accordance with prison policy, the cell extraction team was accompanied by a videographer.

Upon entering the cell, the officers quickly secured White's wrists and ankles and stood him up on his feet. As White was standing, someone shoved him from behind, causing him to hit his head against the concrete wall. The identity of the officer who pushed him cannot be discerned from the video. According to White's testimony in the first trial: "[S]omething shoved me in my back, hard. And when it shoved me hard, I went straight across my bunk and hit the window. . . . I hit the edge of the concrete. . . . And my head busted. I went across the bunk, I couldn't break my fall because I was handcuffed behind my back." After the impact, blood ran down White's face and into his mouth. White spit blood at the officers, who led him downstairs, where they pushed him onto the ground and dragged him to the recreation yard. A nurse came to the yard and treated White, and White was eventually transported to Meharry Hospital to receive staples for a forehead laceration. As a result of his injury, White now has a scar on his forehead.

White sued eight officers for Eighth Amendment violations under 42 U.S.C. § 1983. The first trial took place in September 2013 and resulted in a verdict in favor of all defendants.

White then filed a motion for a new trial. The district court granted the motion with respect to only three defendants: Joshua McCall, Gaelan Doss, and Sean Stewart. In granting the motion, the district court stated:

> The undisputed facts at trial showed that Plaintiff was restrained and compliant when he was shoved into the wall, injuring his head. The only dispute is as to who pushed Plaintiff into the wall. Defendant McCall testified that Defendants Doss and Stewart pushed Plaintiff into the wall. Defendant Doss testified that McCall pushed Plaintiff into the wall. Defendants Rader and Stewart testified that they believed McCall pushed Plaintiff into the wall. Given the undisputed evidence, the Court concludes that pushing a restrained and compliant inmate into a wall, causing injury to the inmate's head, constitutes excessive force under the Eighth Amendment. Thus, the Court concludes that the jury's verdict that Plaintiff was not subjected to excessive force when Plaintiff, while restrained and compliant, was pushed into the wall is against the clear weight of the evidence. As to who pushed Plaintiff into the wall is a credibility issue to be resolved by the jury. Defendants McCall, Doss and Stewart were the only Defendants implicated in pushing Plaintiff's head into the wall.
>
> . . . .
>
> . . . [T]he Court concludes that the issue to be retried is whether McCall, Doss and/or Stewart committed excessive force by pushing Plaintiff's head into the wall in violation of the Eighth Amendment.

The second trial took place in January 2015 and resulted in a judgment of $30,000 against McCall, $15,000 against Doss, and $15,000 against Stewart. McCall—who proceeded pro se and was not represented by the Tennessee Attorney General's Office—did not appeal the judgment against him, but Doss and Stewart appealed, asking us to reinstate the original jury verdict that found them not liable. The key facts of this case are undisputed. All parties agree that: (1) someone pushed White into the wall, causing him to suffer a head injury; (2) White did not see who pushed him; and (3) at trial, McCall blamed Doss and Stewart, while Doss and Stewart (and former defendant Joel Rader) blamed McCall. The sole issue for us to decide in this appeal is whether the district court properly ordered a new trial against Doss and Stewart.

II

We review a district court's decision to grant a new trial for abuse of discretion. *Duncan v. Duncan*, 377 F.2d 49, 53 (6th Cir. 1967). The phrase "abuse of discretion" is "generally regarded as a 'definite and firm conviction [on the part of the reviewing court] that the court below committed a clear error of judgment.'" *Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir. 1996) (alteration in original) (quoting *Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir. 1982)).

In deciding whether to grant a new trial, a district court must view the evidence "most strongly in favor of the verdict." *Ross v. Meyers*, 883 F.2d 486, 488 (6th Cir. 1989). A jury's verdict is against the weight of the evidence if it is "unreasonable." *Holmes*, 78 F.3d at 1047. The court should deny a motion for a new trial "if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991).

One of the basic elements of a § 1983 claim is causation. A "public official is liable under § 1983 only if he causes the plaintiff to be subjected to a deprivation of his constitutional rights." *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) (quoting *Baker v. McCollan*, 443 U.S. 137, 142 (1979)). "Causation in the constitutional sense is no different from causation in the common law sense." *Ibid.* Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequence of his actions." *Ibid.* (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)).

The requirement of causation must be proven with respect to each defendant that the plaintiff seeks to hold liable. If a defendant "is to be held liable, it must be based on the actions

of that defendant in the situation that the defendant faced." *Toms v. Taft*, 338 F.3d 519, 533 (6th Cir. 2003) (Gilman, J., concurring in part and dissenting in part) (quoting *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)). In *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002), prisoners who alleged the use of excessive force in removing them from their cells brought claims against unidentified officers because they "were unable to identify the officers . . . [who] wore black uniforms, gas masks, and no name badges." *Id.* at 557. This court rejected the argument that the plaintiffs were "entitled to recover damages from some source, even if they [could] not prove that any named defendant actually used force against them," and affirmed the district court's grant of summary judgment to the defendants. *Ibid.*

A plaintiff who brings an Eighth Amendment excessive-force claim under § 1983 must also satisfy the subjective component of the Eighth Amendment test, which requires proof that the defendant applied force "maliciously and sadistically for the very purpose of causing harm." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). This subjective inquiry requires an examination of the defendant's mental state, and therefore "must be addressed for each officer individually." *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

Given the individualized requirements of causation and subjective malice, the jury in the first trial—whose verdict form properly asked for a decision on each defendant's liability separately—could not have imposed liability on any individual defendant unless there was proof by a preponderance of the evidence that he was actually responsible for maliciously shoving White. The district court, however, ignored the requirements of causation and subjective malice in its reasoning. The crucial error in the district court's analysis lies with its use of the passive

voice to characterize the jury's verdict. The court assumed that when the jury found no defendant liable, it concluded that White "was not subjected to excessive force."

But the jury could very well have found that White was subjected to excessive force while also finding that the elements of causation and subjective malice were not met; in other words, the jury could have found that while the force itself was excessive, White had not proven who had employed it. As the district court noted, the facts elicited in the first trial were as follows:

> The undisputed facts at trial showed that Plaintiff was restrained and compliant when he was shoved into the wall, injuring his head. The only dispute is as to who pushed Plaintiff into the wall. Defendant McCall testified that Defendants Doss and Stewart pushed Plaintiff into the wall. Defendant Doss testified that McCall pushed Plaintiff into the wall. Defendants Rader and Stewart testified that they believed McCall pushed Plaintiff into the wall.

From these facts, the jury could have reached at least two conclusions. On the one hand, the jury could have concluded that McCall shoved White into the wall and lied about Doss and Stewart being responsible. On the other hand, it could have found that Doss and Stewart were responsible for shoving White and that McCall was telling the truth. Having listened to the testimony, watched an inconclusive video, and judged the credibility of the witnesses, the jury could reasonably have found that these two conclusions were equally plausible. In that event, there would be insufficient evidence to identify any individual as more than 50% likely to be the perpetrator, and the jury would have no choice but to return a verdict in favor of all defendants. *Cf. Combs*, 315 F.3d at 557–58.

White presents no argument that persuasively rebuts this conclusion. In some parts of his brief, he seems to claim that the evidence at the first trial conclusively proved that all three defendants shoved him, but as counsel wisely conceded at oral argument, that conclusion is neither compelled nor plausible. As White's brief acknowledges, "White could not identify who

pushed him from behind," and "McCall testified [that] Doss and Stewart committed the assault on White, [but] Stewart testified [that] he believed [that] McCall caused White's injuries, and Doss testified [that] McCall 'abused Mr. White,'" The contradictory testimony of the defendants, combined with White's inability to identify the perpetrator, could have led a reasonable jury to conclude that there was not enough evidence to find any defendant liable.

In other parts of his brief, White reiterates the district court's flawed contention that, even though it was unclear who pushed White, it was unreasonable for the jury to find no one liable. White cites several cases, such as *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972), for the proposition that acts of omission are actionable to the same extent as acts of commission. In *Byrd*, the plaintiff testified that he "was surrounded by about a dozen officers [in the back room] . . . [and] was then struck repeatedly but could not identify which officers struck the blows." *Id.* at 9. The Seventh Circuit reversed the district court's grant of directed verdicts to the defendants, stating that "[w]e believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Id.* at 11. In *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990), this circuit adopted the reasoning of *Byrd* in a similar situation involving officers' failure to stop their comrades from unlawfully beating an individual. *Id.* at 188 (affirming the district court's denial of defendants' motion for judgment notwithstanding the verdict because an officer who observes an unlawful beating may be held liable for failing to intervene).

The facts of this case are much different from those of *Byrd* and *McHenry*. In this case, the video of the extraction shows that White was shoved suddenly and without warning; the entire incident was over in a matter of seconds. Merely being in the presence of an officer who

suddenly shoves someone is not the same as standing by idly while a group of officers surrounds and beats someone. "[T]he Sixth Circuit has found no duty to intervene where, as here, an entire incident unfolds in a matter of seconds." *Murray-Ruhl v. Passinault*, 246 F. App'x 338, 348 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Ontha v. Rutherford County*, 222 F. App'x 498, 506 (6th Cir. 2007)). In *Murray-Ruhl*, we held that an officer did not have a duty to stop another officer from shooting at someone because "[e]ven if [he] was immediately able to perceive what was happening once the first shot was fired, he would not have had enough time to act to stop . . . [the] shooting." *Ibid.* In *Ontha*, we held that an officer in the passenger seat of a car did not have a duty to stop an officer in the driver's seat who accelerated toward a fleeing suspect because he "would have had to *both* glean the nature of [the driver's] actions *and* decide upon and implement preventative measures within a short time span of six to seven seconds." 222 F. App'x at 506. Officers are liable for failing to intervene only when they at least have some chance of stopping the use of excessive force, as was the case in *Byrd* and *McHenry*. Here, a reasonable jury could have found that Doss and Stewart did not have enough time to prevent the perpetrator from shoving White, making this case analogous to *Murray-Ruhl* and *Ontha*.

Another problem with White's argument is that *Byrd* and *McHenry* involved the question of whether the district court could override the jury and rule for the defendant. In that scenario, all inferences must be drawn in favor of the plaintiff. By contrast, this case involves a plaintiff's motion for a new trial, which requires all inferences to be drawn in favor of the jury's verdict; which is to say, in favor of the defendants in this case. Whereas *Byrd* and *McHenry* defended the role of the jury in the fact-finding process, the district court's decision in this case undermined it.

In addition to the omission argument, White cites *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002), which involved an individual who was punched and kicked from behind and could

not identify the assailants. *Id.* at 649–50. The Third Circuit stated that "the fact that Smith has acknowledged that he could not see those defendants during the beating neither negates their involvement nor their liability as a matter of law." *Id.* at 650. In that case, however, the district court denied summary judgment to the defendants because there was testimony from the plaintiff that "all of them" attacked him. *Ibid.* The court went on to state that "[t]he extent of each officer's participation is . . . a classic factual dispute to be resolved by the fact finder." *Ibid.* *Smith* therefore did not negate the requirement of individualized evidence of wrongdoing; instead it held that the evidence in the record was sufficient for a jury to find that each individual defendant had engaged in wrongdoing. Furthermore, *Smith* held that the factual issue of each officer's involvement is a matter for the jury to decide, which is contrary to the district court's decision in this case to usurp the jury's role.

The broader problem with White's citation to all of these cases is that they provide support for the proposition that a jury *could* have found all three defendants liable in the first trial, but do not demonstrate that the jury *had to* find someone liable. That proposition is novel and without precedent. The district court's disregard for the jury's verdict in this case is deeply troubling. As White's counsel acknowledged at oral argument, if we accepted White's position, nothing would stop the district court from ordering a third, fourth, or fifth trial if each jury found the defendants not liable. Furthermore, suppose that a victim of a tort or constitutional violation knows nothing about the identity of the perpetrator except that he is a "Chinese man" or a "black man," which in the facts of that case, narrows down the universe of potential perpetrators to three individuals—or twenty. Those individuals offer contradictory testimony at trial, and the jury returns a verdict in favor of all defendants because there is not enough evidence to identify the perpetrator. Under White's position, the district court could repeatedly force the case to be

retried until someone in the identified group is found liable on the ground that the jury *has* to identify *somebody* as the perpetrator. That outcome cannot be reconciled with the legal requirements of causation and subjective malice, and with the plaintiff's burden of proof.

III

For the foregoing reasons, we hold that the district court abused its discretion when it granted White's motion for a new trial. We therefore REVERSE the district court's decision and reinstate the first jury's verdict.