NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0283n.06

No. 14-3875

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PHILIP APSEY, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Apr 15, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHESTER TOWNSHIP, et al., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

**BEFORE: GUY, COOK, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Officers Matthew Brickman and Todd Pocek bring this interlocutory appeal from an order of the district court denying them qualified immunity on plaintiff Philip Apsey's 42 U.S.C. § 1983 claims of false arrest and malicious prosecution. We REVERSE the district court because the undisputed facts show probable cause existed to arrest and prosecute Apsey and REMAND for consideration of the stayed state law civil conspiracy claim.

### I. Background

On July 13, 2010, Officers Brickman and Pocek were dispatched to the intersection of Route 306 and Cedar Road, driving in separate vehicles. Karen Moleterno, the assistant fire chief, had reported a tip that Apsey would be in a gray pickup truck driving through the intersection to take his son to daycare and would be driving under a suspended license. (R. 49-3, Page ID # 792.) Officer Brickman spotted Apsey at the intersection around 8:46 AM and testifies that he observed Apsey drive left of the solid yellow line.

Brickman and Pocek stopped Apsey's truck. (R. 49-1, Page ID # 585.) Brickman approached first and noticed a young child in the passenger seat. The child was wearing a t-shirt from the nearby daycare while clutching a towel and lunch pail. Brickman asked Apsey where he was taking his son and told Apsey he was stopped for crossing the yellow line. At some point, Pocek also came to be standing by the truck. Apsey then produced court papers which showed Apsey's driving privileges were limited to driving for work purposes. (R. 44, Page ID # 374; R. 49-1, Page ID # 588.) Brickman plugged the information into the LEADS System, a statewide law enforcement database. The system indicated that Apsey had a suspended license but did not indicate that Apsey had driving privileges of any kind. As Brickman testified, if a license is suspended, the system displays a red background with white letters spelling out "suspended" but adds a special notation if some driving privileges exist. (R. 44, Page ID # 281.)

According to Apsey, Brickman then walked back and forth to his cruiser roughly twelve times, each time asking Apsey a new question. Pocek stood by the truck during the questioning. The most Apsey recalls in terms of a discussion with Pocek is Apsey asking Pocek to step away from the truck and Pocek explaining that Brickman had told him to stay. Eventually, Brickman asked Apsey where he was headed. Apsey replied he was going to a job site in Kirtland. When Brickman told Apsey that Kirtland was in the other direction, Apsey responded that he actually meant a different job site off Route 700. Apsey had been there twice but was going to take some measurements. Brickman then asked if he could speak to someone at the job site to confirm Apsey's story. When Apsey responded that no one was available, Brickman asked if Apsey was actually taking his son to daycare. Apsey denied that he was. At some point, Apsey also told Brickman they could drive to Apsey's home where Apsey could show him the quote sheets for the job site in order to validate his story. (R. 49-1, Page ID # 588.) After speaking to his

supervisor, Brickman decided instead to follow Apsey to the job site[1] and, while following Apsey, had Pocek contact the daycare, which confirmed that Apsey's son was due to check-in at 8:55 AM.

After driving for some time, Apsey pulled into a driveway off Munn Road and began making a U-turn. Brickman then exited his cruiser and asked where the job site was. Apsey told Brickman he had pulled into the wrong driveway but that it was the next driveway over. Apsey then explained "Neal is right there" to which Brickman responded that Apsey was under arrest. (R. 49-1, Page ID # 591.) The individual Apsey identified as Neal then tried to approach and speak to Brickman. However, Brickman asked Neal to stay in place and then arrested Apsey for driving under suspension and for obstruction of official business. (R. 44, Page ID # 312–33.)

Prosecutors later charged Apsey with driving under suspension, obstruction of official business, and improper lane travel. Apsey negotiated a plea deal and pled guilty to improper lane travel in exchange for dismissing the other charges. Apsey next brought this § 1983 action against Chester Township, four township police officers, including Brickman and Pocek,[2] as well as Moleterno and Darlene Marzano, Apsey's ex-wife and Moleterno's cousin. Apsey alleged that police had conspired with his ex-wife and her cousin to have Apsey arrested to harm Apsey's position in his ongoing custody battle with Marzano over their son. Apsey brought four claims: (i) arrest without probable cause against the officer–defendants, (ii) malicious prosecution against the officer–defendants, (iii) *Monell* liability against the township, and (iv) state law civil conspiracy against all defendants.

---

[1] Apsey testifies that "Brickman was the only car following me." (R. 49-1, Page ID # 590.) It is unclear from the record where Pocek was during the drive to the job site or the arrest in the driveway at Munn Road.

[2] Apsey voluntarily dismissed his claims against two of the four police officers. (R. 26.) Thus, at summary judgment, the only officer–defendants remaining were Brickman and Pocek.

The magistrate granted summary judgment on the claim of *Monell* liability and denied summary judgment on the claims of false arrest and malicious prosecution. The magistrate also stayed the claim of state law civil conspiracy pending resolution of the false arrest and malicious prosecution claims. Brickman and Pocek timely appeal the denial of summary judgment on Apsey's false arrest and malicious prosecution claims.

### I. No Genuine Dispute of Material Fact

We review de novo a district court's order denying summary judgment based on qualified immunity. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013) (citation omitted). In doing so, we view the evidence in the light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, this court has jurisdiction to review an order denying qualified immunity only "to the extent [the order] turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Apsey claims the court lacks jurisdiction because qualified immunity turns on whether Apsey crossed the yellow line, an issue which Apsey claims is genuinely in dispute. We disagree and find there is no genuine dispute: On this record, Apsey *did* cross the yellow line. Apsey pled guilty to improper lane travel in state court and cannot, for purposes of summary judgment, abandon his guilty plea to manufacture a dispute of material fact.

Under Ohio law, "[a]n accepted guilty plea in an Ohio criminal proceeding is the equivalent of the defendant taking the witness stand and admitting under oath his guilt of the offense charged." *State v. Knaff*, 713 N.E.2d 1112, 1114 (Ohio Ct. App. 1998). Thus, when Apsey pled guilty to improper lane travel, he was making an admission under oath that he crossed the yellow line. As this court has made clear, a party may not contradict an admission made under oath without providing some persuasive explanation for the contradiction. *See White*

*v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Yet, in his deposition, Apsey did not attempt to explain the contradiction. Instead, he attempted to absolve himself of responsibility for the guilty plea:

> I don't believe I [crossed the yellow line], and there was not any evidence of it. But Pat Quinn did plead a guilty charge on that. And to this day, I don't believe I ever did, and I have not seen any proof of it, no video, anything. (R. 586).

Because no genuine disputes of material fact exist concerning Apsey's arrest and prosecution, this court may address the purely legal question of whether the undisputed facts give rise to a violation of clearly established law.

## II. Case Law on False Arrest and Malicious Prosecution

If an officer has probable cause, then the resulting arrest will not violate the Fourth Amendment. *See Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Likewise, if a prosecutor has probable cause, then the initiation of criminal proceedings is not a malicious prosecution in violation of the Fourth Amendment. *See Stemler v. City of Florence*, 126 F.3d 856, 871–72 (6th Cir. 1997). Probable cause to arrest and probable cause to prosecute are related but distinct concepts. *See Mott v. Mayer*, 524 F. App'x 179 (6th Cir. 2013) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010), and *McKinley v. City of Mansfield*, 404 F.3d 418, 445 (6th Cir. 2005)). While probable cause to arrest on *any* crime precludes a false arrest claim, probable cause to prosecute must be established with respect to *each* charge brought by a prosecutor to preclude a malicious prosecution claim. *See id*.

## III. Qualified Immunity as to Pocek

In a § 1983 action, each defendant's liability must be individually assessed to ensure that no defendant is improperly held liable for the conduct of another. *See Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015). We begin by assessing Pocek's liability and find

his participation in the day's events insufficient to render him liable as a matter of law. "Pocek's contribution to the arrest," Appellee Br. at 32, appears to be helping with the initial stop of Apsey's pickup, standing by the pickup while Brickman questioned Apsey, and then contacting the daycare, (R. 44, Page ID # 374). That conduct alone did not violate the Constitution. There was probable cause to stop the pickup since, on this record, Apsey did cross the yellow line and, to the extent Apsey claims Pocek is liable by not stopping Brickman's arrest of Apsey, *see* Appellee Br. at 31, that claim fails because the record clearly shows Brickman had probable cause to arrest Apsey. *See infra* at Part IV.A. For these reasons, we reverse the denial of qualified immunity to Pocek on both the false arrest and malicious prosecution claims.

### IV. Qualified Immunity as to Brickman

### A. False Arrest

As to Apsey's false arrest claim against Brickman, the parties have stipulated that "L.E.A.D.S. records confirmed that Philip Apsey's driving privileges were suspended at the time he stopped and was arrested by Chester township Patrolman, Defendant Matthew Brickman," (R. 38, Page ID # 151). Further, it is undisputed that Brickman checked the LEADS System before arresting Apsey, a check which did not turn up any driving privileges. Under those circumstances, Brickman could have reasonably concluded that Apsey was driving under a suspended license.

And even if Apsey was permitted to drive under certain restrictions, Brickman could have reasonably concluded that Apsey was violating those restrictions by driving not to a job site but to the daycare. Brickman could also have reasonably concluded that Apsey's responses and conduct were intended to stop Brickman from realizing that Apsey was driving in violation of his license restrictions. As Brickman testified, "Once we arrived [on Munn Road], I knew [the

plaintiff] was not being truthful as I asked him to exit the vehicle." (R. 44, Page ID # 336.) Because Brickman had probable cause to arrest Apsey for driving under suspension and for obstruction of official business, we reverse the denial of qualified immunity to Brickman on the false arrest claim.

### B. Malicious Prosecution

In a § 1983 action alleging malicious prosecution, the burden of proving a lack of probable cause is on the plaintiff. *See Sykes v. Anderson*, 625 F.3d 294, 309–09 (6th Cir. 2010). Apsey has not met that burden. As discussed, the undisputed facts of the encounter between Apsey and Brickman created probable cause to arrest Apsey for driving under suspension and obstruction of official business. Those facts were recounted in a police report written by Brickman. (*See* R. 44, Page ID # 372–79.) That report, in turn, provided the prosecutors with sufficient evidence of probable cause to prosecute. Nothing in the record suggests that the facts known to Brickman at the time of arrest had materially changed by the time criminal proceedings were initiated so that any existing probable cause would have dissipated, and Apsey makes no argument to that effect. Thus, we reverse the denial of qualified immunity to Brickman on the malicious prosecution claim.

### V. Conclusion

For the foregoing reasons, the decision of the district court is **REVERSED** with respect to the false arrest and malicious prosecution claims and **REMANDED** for consideration of the stayed state law conspiracy claim.