NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0230n.06

Case No. 17-5834

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAWN ALEXANDER, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | May 02, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MICHAEL CARTER, Representative for / | ) | THE WESTERN DISTRICT OF |
| behalf of TONY BYRD, deceased, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; GUY and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff-Appellant Dawn Alexander ("Alexander") appeals the decision of the district court granting the motion of Defendant-Appellee Michael Carter ("Carter"), as Representative for Deceased on behalf of Deputy Tony M. Byrd ("Deputy Byrd") of the Gibson County, Tennessee Sheriff's Department, for summary judgment, and dismissing Alexander's Fourth Amendment claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, and unlawful use of force. For the reasons stated herein, we **AFFIRM** the judgment of the district court.

I.      **Background of the Case**

A.      **Factual Background**[1]

The events giving rise to Alexander's 42 U.S.C. § 1983 action relate to her arrest on January 28, 2013 in Gibson County, Tennessee. On that date, Officer Don Burress ("Officer Burress") of the Medina Police Department made a traffic stop of Hayden Green, Alexander's nephew, due to Green's suspected involvement in a hit-and-run accident. Officer Burress made the traffic stop on a private driveway at 19 Sitka Road ("19 Sitka"), Gibson County, Tennessee. The 19 Sitka Road property belonged to Alexander's sister. Officer Burress then called Central Dispatch, reported his location, which was beyond the Medina Police Department's jurisdictional bounds, and asked, "Could you get a County unit out here? Because, I mean, I'm in the County now." Officer Burress then questioned Green regarding his whereabouts, whether he was intoxicated, and the hit-and-run accident. Meanwhile, Officer Jason McCallister ("Officer McCallister") of the Medina Police Department appeared on the scene. Shortly thereafter, Chief Chad Lowery ("Chief Lowery") of the Medina Police Department also appeared on the scene, followed by Deputy Byrd. Officer Burress then conducted a field sobriety test on Green, placed him under arrest, and handcuffed him.

Around the time of Green's arrest, Alexander arrived by car at her son's house, next door at 21 Sitka Road ("21 Sitka"), noticed police cars parked in her sister's driveway at 19 Sitka, and walked to her sister's house. Approximately one minute after Green was handcuffed, Alexander walked up the 19 Sitka driveway, where Green stood with three officers: Officer Burress and Chief Lowery of the Medina Police Department, and Deputy Byrd of the Gibson County Sheriff's Department. Alexander approached the group of men, said "Hey" and then asked,

---

[1]The facts set forth in Section I.A of this opinion are undisputed, unless otherwise specified.

"What is going on?" Green stated, "I don't know, Mama Dawn, they're arresting me for nothing."

Officer McCallister, who had walked away from his colleagues just before Alexander arrived, approached Alexander, and asked her to leave the scene, pointing towards the street. Alexander responded, "No, this is my nephew, this is all of our properties." Officer McCallister again asked Alexander to leave and again pointed towards the street. Alexander took several steps back from the driveway and said that she wanted to ask Green a question. Officer McCallister again approached Alexander, placed his left hand on her right arm, and stated, "Go back there to your car." Alexander pushed Officer McCallister's hand away and said, "Get your hands off me, I am not leaving." . At that point, Deputy Byrd approached Alexander, stood in front of her, raised his right arm, and pointed it towards the street.

Almost immediately, Officer McCallister handcuffed Alexander while Chief Lowery assisted by taking Alexander's purse. While Officer McCallister was placing the handcuffs, Deputy Byrd stood in front of Alexander and again pointed toward the street. Officer McCallister exclaimed to Alexander, "And then you pushed me!" Officer McCallister then led Alexander down the driveway, apparently pushing or guiding her forward with his left arm, with Deputy Byrd following some two paces behind. At one point Officer McCallister shoved Alexander from behind, causing her to stumble. The video recording does not show Deputy Byrd touching Alexander, and he had no involvement in her handcuffing.

The parties nevertheless dispute Deputy Byrd's role in the arrest. Alexander alleges that during her arrest, "Deputy Byrd and [O]fficer McCallister stood directly in front of" Alexander; that Deputy Byrd "gave directions with his arms while McCallister handcuffed [Alexander] . . . and directed [Officer] McCallister to place [Alexander] in the patrol car."

Alexander further alleges that Deputy Byrd and the City of Medina officers were part of a "joint undertaking . . . to arrest, detain, and imprison" Alexander. Furthermore, Alexander alleges that Deputy Byrd "failed to take any actions to curb the excessive use of force against [Alexander]." Deputy Byrd, on the other hand, asserts that he "did not instruct the City of Medina officers at any time to arrest [Alexander] . . . [nor] did [he] assist Chief Lowery or Officer Burress in arresting [Alexander]."

McCallister placed Alexander against his patrol car—frisking her for weapons—then in the back seat of the car.[2] Alexander waited in the patrol car for approximately 30 to 45 minutes, Officer McCallister joined her in the car and informed her that she was under arrest for assaulting a police officer. Only Officer McCallister ever told Alexander that she was under arrest. McCallister transported Alexander to the Gibson County Jail, where she was booked into the jail at 6:00 p.m., and released at 7:18 p.m. Later that evening, Deputy Byrd filed two affidavits of complaint, charging Alexander with resisting arrest and assaulting a police officer. On April 2, 2013, the court conducted a preliminary hearing on the charges against Alexander and dismissed them for lack of probable cause.

## B. Procedural History

Alexander filed a complaint on January 28, 2014, alleging the violation of her constitutional rights under 42 U.S.C. § 1983, and claims under Tennessee law. Alexander brought § 1983 claims for infringement of her Fourth and Eighth Amendment rights to be free from arrest, imprisonment, unreasonable use of force, and prosecution without probable cause. She also asserted Tennessee common-law equivalent claims as well as assault and battery, and

---

[2]In the summary judgment phase and on appeal, Alexander changed her allegations to include Deputy Byrd's direct involvement in "forc[ing] her into the backseat" of the patrol car, and in "push[ing] her face down against the trunk of the police car while Officer McCallister frisked her." For the reasons set forth below, we decline to consider these new allegations. *See infra*, Section III.B.1.

intentional infliction of emotional distress. The complaint named as Defendants Gibson County, Tennessee; the Gibson County Sheriff's Department; the City of Medina, Tennessee; Deputy Byrd; Chief Lowery; and Officer McCallister. On October 24, 2014, the district court dismissed all of Alexander's § 1983 claims against Gibson County and the Gibson County Sheriff's Department, and declined to exercise supplemental jurisdiction over Alexander's state law claims. However, the district court denied Deputy Byrd's motion to dismiss the § 1983 claims against him in his individual capacity. Subsequently, the parties filed stipulations of dismissal as to the City of Medina, Chief Lowery, and Officer McCallister, as to all claims, leaving only the § 1983 claims against Deputy Byrd for trial.[3]

By order of June 21, 2017, the District Court granted summary judgment to Deputy Byrd: (1) as to Alexander's § 1983 malicious prosecution claim, as waived; (2) as to Alexander's § 1983 excessive force claim, based on her not showing that Deputy Byrd (a) had "direct responsibility," or (b) or supervisory authority over the other officers, and (c) her failure to plead that Deputy Byrd had a duty to protect; and (3) as to Alexander's § 1983 false arrest claim, because (a) Deputy Byrd did not place Alexander under arrest, (b) the Medina officers' request for a sheriff's deputy explained Deputy Byrd's presence, not his "direct responsib[ility] for the arrest," (c) Alexander's contention that the Medina officers had no jurisdiction to arrest her would only make out a claim against the officers who allegedly acted outside of their authority, not Deputy Byrd, and (d) when Deputy Byrd prepared the affidavits of complaint, the arrest was already complete.

---

[3]On July 1, 2015, counsel for Deputy Byrd filed a suggestion of death giving notice of Deputy Byrd's death on or about June 24, 2015. Alexander moved to substitute the administrator ad litem for Deputy Byrd's estate; the district court granted the motion on February 17, 2016.

## II.     Legal Framework

### A.     Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment. *Smith v. City of Troy, Ohio*, 874 F.3d 938, 943 (6th Cir. 2017). Summary judgment is appropriate "if the pleadings, the discovery and the disclosure materials on file, and any affidavits 'show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). There is "no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the" nonmovant. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In considering a motion for summary judgment, the reviewing court must construe all facts and draw all reasonable inferences therefrom in favor of the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Matsushita Elec.*, 475 U.S. at 587. To defeat a motion for summary judgment, though, requires more than a "mere . . . scintilla of evidence in support of the [nonmovant's] position"; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B.     Section 1983 Claim

Under § 1983, a person "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws," "under color of any statute, ordinance, regulation, custom, or usage, of any State," may seek civil redress. 42 U.S.C. § 1983. A § 1983 claim requires deprivation of a plaintiff's "federal constitutional or statutory right." *Lewellen v. Metro. Gov't*, 34 F.3d 345, 347 (6th Cir. 1994). Section 1983 confers no substantive rights, *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotation omitted), but rather creates a "species of tort liability" for the

violation of constitutional rights, *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). The threshold inquiry under § 1983, therefore, is to determine "the specific constitutional right" at issue. *Id.* (quotation omitted). The reviewing court must then "determine the elements of, and rules associated with, an action seeking damages for [the] violation" of that right. *Id.* (citation omitted).

## III. Analysis

### A. Malicious Prosecution

This Court recognizes a constitutionally cognizable Fourth Amendment claim of malicious prosecution, "encompass[ing] wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006). To prevail on a § 1983 malicious-prosecution claim premised on a Fourth Amendment violation, a plaintiff must prove that: (1) the defendant made, influenced, or participated in the decision to prosecute; (2) probable cause was lacking for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

Count II of Alexander's complaint alleged that Deputy Byrd subjected her to malicious prosecution, in violation of her Fourth Amendment rights. However, the district court held that Alexander waived the claim by failing to address it in response to Deputy Byrd's motion for summary judgment. When a plaintiff "fails to address [a claim] in response to a motion for summary judgment," the claim is deemed waived. *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568-69 (6th Cir. 2015) (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)). Where claims are so waived, district courts in this Circuit grant

summary judgment as a matter of course. *See, e.g., Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *see also Jones v. Kimberly-Clark Corp.*, No. 99-6280, 2000 U.S. App. LEXIS 30249, at *4, 9 (6th Cir. 2000).

Here, Deputy Byrd's Motion for Summary Judgment addressed Alexander's malicious prosecution claim, arguing that Alexander did not suffer a constitutional deprivation of liberty apart from her initial seizure. In her response, Alexander failed to respond to Deputy Byrd's argument regarding Alexander's malicious prosecution claim, or otherwise to address that claim. Therefore, under the law of this Circuit, we find that the district court properly deemed Alexander's malicious-prosecution claim waived. *See Haddad*, 610 F. App'x at 568-69.

## B.     Excessive Force

Alexander alleges that excessive force was used against her during her arrest, in violation of her Fourth Amendment rights. The Fourth Amendment prohibition of unreasonable seizures protects against the use of excessive force during an arrest. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). The use of force is evaluated under an objective standard of reasonableness in view of the totality of the circumstances. *Graham*, 490 U.S. at 396. Among the factors a reviewing court weighs are the nature and severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting flight. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

An officer may not be held liable for the actions of other officers; "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citing *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008)). For an

officer to be held liable for inflicting excessive force, the plaintiff "must prove that [the officer] (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 505 (6th Cir. 2007) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *see also Binay*, 601 F.3d at 650.

### 1. Active Participation

An officer's "mere presence" at a search, "without a showing of direct responsibility for the action, will not subject an officer to liability." *Binay*, 601 F.3d at 650 (quoting *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)); *see also Burgess*, 735 F.3d at 475.

Alexander's complaint alleged no physical contact by Deputy Byrd, and it is undisputed that the video record does not show Deputy Byrd touching Alexander, and that Deputy Byrd had no involvement in handcuffing her. Alexander alleged for the first time in her summary judgment response that, after her frisking, "[s]he was . . . forced into the backseat vehicle [sic] *by [Deputy] Byrd*." In a declaration submitted at summary judgment, Alexander also newly alleged that she was "thrown over the trunk" of a patrol car "and [her] face was held flat against the hood *by Deputy Byrd* while [Officer McCallister] frisked [her]."[4]

The problem with these allegations of physical contact by Deputy Byrd on Alexander is that they were absent from Alexander's complaint.[5] The complaint alleged only, in pertinent part, that "[Officer] McCallister pushed [Alexander] forward over the hood of a police car and

---

[4]Another allegation made for the first time at the summary judgment phase was that Alexander "told [Deputy] Byrd and [Officer] McCallister that they were hurting [her] and the cuffs were too tight, but they made no effort to alleviate the pain." Alexander's complaint contained no such allegation; the only allegation regarding pain from the handcuffs was that, while pushing her down the driveway, Officer McCallister "pulled up on [her] handcuffs to inflict pain."

[5]Moreover, we note further that these new allegations that Deputy Byrd directly used physical force against Alexander were omitted from Alexander's appellate brief, which alleged only that Deputy Byrd watched force being used by Officer McCallister and failed to intervene to stop it. (Appellant's Br., *passim*).

frisked her." The district court therefore declined to consider the new claim of use of force by Deputy Byrd.

It is well established that a plaintiff is "bound by admissions in [her] pleadings, and . . . cannot create a factual issue by subsequently filing a conflicting affidavit." *Trimas Corp. v. Myers*, 572 F. App'x 347, 352 (6th Cir. 2014) (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000)); *see also Ferguson v. Neighborhood Housing Servs.*, 780 F.2d 549, 550-51 (6th Cir. 1986) (holding that a party may not later deny a fact she had admitted in a pleading, absent extraordinary circumstances). Here, Alexander's complaint pleaded that it was Officer McCallister who "pushed [Alexander] forward over the hood of [the] police car and frisked her." Alexander's complaint made no mention of involvement by Deputy Byrd or any other officer in those acts. Therefore, we hold that Alexander may not proceed with the new claim that Deputy Byrd used physical force against her during her arrest.

Beyond "mere presence" at the arrest scene, *see Binay*, 601 F.3d at 650, Deputy Byrd's only involvement consisted of standing near Alexander and pointing toward the street, echoing Officer McCallister's gestures to Alexander. Because Alexander has asserted no other basis for finding that Deputy Byrd "actively participated" in the use of excessive force against her, we find that Alexander has failed to establish an issue of fact on the "active participation" theory as to her excessive force claim as to Deputy Byrd. *See Ontha*, 222 F. App'x at 505.

### 2. Supervisory Liability

Regarding the second method of showing excessive force, Alexander appears to argue that Deputy Byrd had supervisory authority over Officer McCallister. (*See* Appellant's Br. at 40). She asserts that "[Deputy] Byrd had significant authority and control over the city police out in [Gibson] [C]ounty" because "[t]he city police were outside of their jurisdiction and

without authority to act." (*Id.*). Therefore, she argues, in his official capacity, Deputy Byrd "could have taken charge of the scene . . . and directed [Officer] McCallister to cease any further activity. He also had authority to stop [Officer McCallister's] use of force by arresting him if he failed to comply." (*Id.*).

Section 1983 liability "must be based on more than respondeat superior, or the right to control employees." *Ontha*, 222 F. App'x at 504 (citation omitted). The supervisor must have "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (citation omitted); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Because § 1983 liability requires "*more than . . .* the right to control employees," a showing of a defendant's "right to control" the officer who committed the alleged misconduct is a necessary, but not sufficient, condition for liability. *See Ontha*, 222 F. App'x at 504 (emphasis added).

It is difficult to discern the basis for finding Deputy Byrd to have had supervisory authority over the arresting officer, Officer McCallister—who, Alexander's complaint recognized, "was under the direct supervision and control of [Chief] Lowery." Alexander appears to argue that because Deputy Byrd had arrest authority within Gibson County, the jurisdiction where her arrest occurred, such arrest authority was equivalent to a "right to control" Officer McCallister and the other members of the City of Medina Police Department on the scene. (*See* Appellant's Br. at 40). Alexander, however, neither cites any authority to support this contention, nor otherwise develops the argument; she merely asserts in conclusory fashion that Deputy Byrd's arrest authority amounted to a "right to control" the other officers at the scene. (*Id.*). A "perfunctory" argument lacking "some effort at develop[ment]" is deemed waived. *Campbell v. Univ. of Akron*, 211 F. App'x 333, 350 (6th Cir. 2006) (quotation omitted).

Alexander's complaint also alleged that "[Chief] Lowery and [Deputy] Byrd directed [Officer McCallister] to arrest Plaintiff." However, Alexander offers no evidence to show that Deputy Byrd directed Officer McCallister to arrest her. Moreover, the interactions that led to Alexander's arrest occurred between Officer McCallister and Alexander. The video shows that it was Officer McCallister's sudden, negative reaction to Alexander's pushing his arm away from her body, that led him to arrest and handcuff her, stating to her with some vehemence, "And then you pushed me!" Other than Alexander's allegations, the record does not support the contention that Deputy Byrd directed Officer McCallister to place Alexander under arrest. Finally, by Alexander's original account of the events in question, Officer McCallister initiated the contact with Alexander that culminated in his handcuffing her, by "again grabb[ing] her right arm," *before* Deputy Byrd allegedly "directed [Officer] McCallister to arrest [Alexander]."

The district court properly found that Alexander could not "even show as a threshold matter that Deputy Byrd supervised" Officer McCallister or any of the other officers at the scene. Nor has Alexander shown that Deputy Byrd "directed" Officer McCallister to arrest her. We therefore conclude that Alexander has not shown a triable issue of fact on the "supervisory liability" method of sustaining an excessive-force claim.

### 3. Failure to Protect

In its grant of summary judgment, the district court "decline[d] to consider a failure to protect theory of liability," on the grounds that Alexander did "not properly raise" such a theory, either in her complaint or in her summary judgment submission. Moreover, the district court held that even were it to construe liberally the arguments raised in Alexander's summary judgment brief, it "would still decline to consider a failure to protect theory of liability" because "it is improper for a plaintiff to raise 'a new legal claim for the first time in response to the

opposing party's summary judgment motion' insofar as 'it denies a defendant sufficient notice of what claims to investigate.'" The district court noted that the restriction on raising "new legal claim[s]" is particularly "critical at summary judgment, 'after a plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories.'"

Alexander implicitly concedes that her complaint did not raise a "failure to protect" theory (Appellant's Br. at 16). However, she contends that the "theory of the pleadings" doctrine no longer holds, and that a party is now "not require[d] . . . to explicitly allege a legal theory for recovery." (*Id.* at 31-32). She asserts that it was "unnecessary to plead" that theory because her factual allegations form "a sufficient basis for recovery" against Deputy Byrd. (*Id.* at 32).

Alexander points to Deputy Byrd's citation of *Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997), where this Court held that "to state an unreasonable use of force claim against a defendant, the plaintiff 'must prove that he . . . owed the victim a duty of protection against the use of excessive force,'" (Appellant's Br. at 33 (quoting *Turner*, 119 F.3d at 429)). The citation of *Turner*, she reasons, "plainly" shows Deputy Byrd's "aware[ness] . . . that *his liability would be based on his duty to protect* Alexander," and therefore that he "had fair notice" of the claim. (*Id.* (emphasis added)). Alexander thus argues that she is entitled "to assert her theory of recovery based on a duty to protect theory of liability, both as to false arrest and excessive use of force," (*id.* at 18-19). The citation to *Turner*, though, does not "plainly" show that Deputy Byrd was on notice that "his liability would be based on his duty to protect Alexander." (*See id.* at 33.) In quoting Deputy Byrd's quotation from *Turner*, Alexander includes only the "duty to protect" theory, (*id.*), creating a misimpression that Deputy Byrd was focused on that theory— when in fact Deputy Byrd quoted all three theories of liability, and addressed the first two.

A defendant's knowledge that the "duty to protect" theory of liability exists does not prove his awareness that a plaintiff may seek or obtain recovery based on that theory.

It is true that the Supreme Court instructs us to disregard the old doctrine of the "theory of the pleadings," on the ground that the Federal Rules of Civil Procedure have rendered it obsolete, focusing instead on the sufficiency of a plaintiff's factual pleading. *See, e.g., Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). However, *Johnson* concerned the sufficiency of pleadings at the motion to dismiss stage, not a motion for summary judgment. As this Court has held repeatedly, a plaintiff "seek[ing] to expand [her] claims to assert new theories[] . . . may not do so in response to summary judgment or on appeal." *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citations omitted); *see also Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784,788 (6th Cir. 2005) (holding "liberal pleading standards" governing motion to dismiss inapplicable at summary judgment); *Patterson v. Outback Steakhouse of Fla. LLC*, No. 17-5035, 2017 U.S. App. LEXIS 21413, at *6 (6th Cir. Oct. 25, 2017) (unpublished) (observing that allowing a party "to raise . . . new legal claim[s] at the summary judgmentstage would . . . subject[] [the contrary party] to unfair surprise" (citation omitted)).

In asserting her "duty to protect" claim Alexander relies on *Colonial Refrigerated Transportation, Inc. v. Worsham*, which held that "the theory of the pleadings doctrine . . . has been effectively abolished under the federal rules," 705 F.2d 821, 825 (6th Cir. 1983) (quoting *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979)). Alexander contends that it was therefore "unnecessary to allege the legal theory of a case where the facts were sufficient to put a defendant on notice." (*Id.* at 31). However, Alexander omits *Worsham*'s qualification that recovery on "a valid claim" even where counsel "fail[ed] to perceive the true

basis of the claim at the pleading stage" is proper "*provided* that such a shift . . . *does not work to the prejudice of the opposing party*." *Id.* (emphases added) (quoting *Oglala Sioux*, 603 F.2d at 714).

Even assuming that Alexander were permitted to proceed on a "duty to protect" theory of liability as to excessive force, though, Alexander has not provided evidence sufficient to show a triable issue of fact. This Court has held that liability may attach for "failing to prevent an act of excessive force if [the officer]: (1) observed or had reason to know that excessive force would be or was being used, and (2) had both the opportunity and means to prevent the harm from occurring." *Pennington v. Terry*, 644 F. App'x 533, 547-48 (6th Cir. 2016). However, where the "act of excessive force unfolds in a matter of seconds, the second requirement is generally not satisfied." *Id.* at 548 (citing *Ontha*, 222 F. App'x at 506). *Pennington* went on to note this Court's "reason[ing] that it demands too much of officers to require that they intervene within a sudden and quickly-expired moment of opportunity." *Id.* (citing *Ontha*, 222 F. App'x at 506-07).

This Court has held that an excessive use of force lasting ten seconds or less does not give a defendant "enough time to perceive the incident and intervene" to stop such force. *Burgess*, 735 F.3d at 476; *Pennington*, 644 F. App'x at 548 (use of force lasting three to seven seconds too brief for defendant to intervene); *but see Goodwin v. City of Painesville*, 781 F.3d 314, 319, 329 (6th Cir. 2015) (tasings lasting a total of twenty-six seconds gave officers sufficient opportunity to intervene, sufficient to survive summary judgment); *Pennington*, 644 F. App'x at 548 (quoting *Goodwin*, 781 F.3d at 329) ("[A] 'prolonged application of force' . . . lend[s] [an officer] more time to recognize the nature of [the] actions and take action to stop [them]." (alterations added)).

Alexander's complaint made three specific allegations of excessive use of force: that "Officer McCallister . . . grabbed her right arm[,] inflicting pain by his grip"; that he "violently and with great force pulled her right arm backward"; and that he "pulled up on [Alexander's] handcuffs to inflict pain and forced her forward two steps down the driveway and then placed his hands on both her shoulders and began pushing her at a run." Each of these actions was of short duration: the second time "Officer McCallister . . . grabbed her right arm" lasted approximately two to three seconds; his "violently and with great force pull[ing] her right arm backward" approximately five seconds; and the "pull[ing] up on" the handcuffs prior to "pushing her at a run down the drive[]way" approximately three seconds. Making the inference in Alexander's favor as nonmovant that she did experience pain[6] as a result of these applications of force, there was no sustained or repeated application of force lasting long enough to have given Deputy Byrd "time to recognize the nature of [the] actions and take[n] action to stop [them]." *See Pennington*, 644 F. App'x at 548.

We find that Alexander has not established a fact question on her excessive force claim under a "duty to protect" theory of liability. Because Alexander failed to make the requisite showing as to any of the three theories of liability, we conclude that the district court properly dismissed Alexander's excessive force claim against Deputy Byrd.

### C. False Arrest

With regard to her false arrest claim, Alexander argues on appeal (1) that Deputy Byrd, "who was present . . . as [Alexander] was falsely arrested . . . by city police officers, . . . made no effort to intervene to protect her," (Appellant's Br. at 2), and (2) that Deputy Byrd was

---

[6]We note, as alluded to above, Alexander's allegation, absent from her complaint and made for the first time at the summary judgment phase, that she "told [Deputy] Byrd and [Officer] McCallister that they were hurting [her] and the cuffs were too tight, but they made no effort to alleviate the pain." *See supra* note 4 and accompanying text.

"involve[d] in the arrest . . . by discussing with the police what charges to file, agreeing with them that he would file affidavits of complaint [], and by thereafter filing the complaints [] with the court charging [Alexander] with criminal offences [sic]," (*id.*, at 2-3).

Among the Fourth Amendment's shields is protection against arrest without probable cause. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (citation omitted). "To establish a § 1983 claim for false arrest, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (quoting *Sykes*, 625 F.3d at 305). Probable cause means a "reasonable probability" that "under the totality of the circumstances" a suspect has committed a crime. *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016) (quotation omitted). "Reasonable probability" is not necessarily *certainty* that arrestee was guilty. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979).

### 1.    Duty to Protect

In arguing that Deputy Byrd had a duty to protect her against false arrest, Alexander urges that the same theory of liability applies both to her excessive force and false arrest claims. We have already concluded that Alexander may not proceed with her argument based on this theory of liability with respect to her excessive force claim. *See supra*, Section III.B.3. For the same reasons set forth in that part of this opinion, we conclude that Alexander is not entitled to proceed on a "duty to protect" theory of liability with respect to her false arrest claim.

### 2.    Personal Involvement

As a threshold matter with respect to this claim, a defendant may not be "held liable for the conduct of another" under § 1983. *Apsey v. Chester Twp.*, 608 F. App'x 335, 339 (6th Cir. 2015) (citation omitted). In order to press her false arrest claim against Deputy Byrd, Alexander

must show that the alleged violation of her rights "was committed *personally* by" Deputy Byrd. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). Alexander appears to concede in her appellate brief that Deputy Byrd was merely "present . . . and watched" while "[Alexander] was falsely *arrested . . . by city police officers.*" (Appellant's Br. at 2) (emphasis added).

A person is arrested when an "officer, 'by means of physical force or show of authority,' terminates or restrains [her] freedom of movement." *United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). A determination of whether a person is under arrest weighs such factors as "significant restraints on the detainee's freedom of movement," "the transportation of the detainee to another location," and "use of . . . bodily force." *United States v. Lindsey*, 114 F. App'x 718, 722 (6th Cir. 2004) (citation omitted). Here, it was not Deputy Byrd but rather Officer McCallister who handcuffed Alexander, frisked her, placed her in the patrol car, and told her she was under arrest. The only other officer physically to take part in the arrest, Chief Lowery, removed Alexander's purse to assist Officer McCallister in placing handcuffs on Alexander.

Alexander asserts that the district court erred in "h[o]ld[ing] that false arrest cases could be brought only against the person who actually made the arrest." (Appellant's Br. at 17). This misstates the district court's holding. The district court found that Alexander "failed to adduce evidence that Deputy Byrd arrested her," but cited *Robertson* more broadly for the proposition that to be a proper §1983 defendant, an officer must have been "personally involved in the incident" allegedly violative of a plaintiff's civil rights.

Alexander also contends that Deputy Byrd's "personal involvement" in her arrest is supported by his "presen[ce] throughout the events leading to [Alexander's] arrest, [having] consulted with Officer McCallister on what charges to file against [Alexander], and [having]

prepared [a]ffidavits of [c]omplaint" against her. Regarding the first of those contentions, an officer's "mere presence" at the scene of an arrest fails to establish § 1983 liability. *See Burgess*, 735 F.3d at 475. Regarding the third contention, the affidavits of complaint were prepared after Alexander's arrest, and fail to show involvement in the arrest. As to the second contention, Alexander's allegation that Deputy Byrd "consulted with Officer McCallister on what charges to file" also refers to a point in time subsequent to Alexander's arrest. In her appellate brief, Alexander cites McCallister's statement that he "admitted he spoke with Deputy Byrd and . . . assisted [him] in deciding what charges to file against her." (Appellant's Br. at 14). She thus finds it "clear that [Deputy Byrd and Officer McCallister] reached an agreement to arrest [her]." (*Id.*). However, Alexander stated that she "observed McCallister and Byrd talking" while she was in the patrol car. (*Id.* at 13). This Court has held that when a suspect is placed in the back of a police car, the suspect is considered to be under arrest. *United States v. Shaw*, 464 F.3d 615, 622 (citation omitted). Alexander was thus already under arrest when she "observed McCallister and Byrd" allegedly "reach[ing] an agreement to arrest" her. (Appellant's Br. at 13, 14).

Moreover, Alexander refers to Officer McCallister as "angrily throwing down his notebook and reaching for his handcuffs." (*Id.* at 36). She also alleges that only "48 seconds . . . elapsed between the time [she] arrived and the time McCallister . . . hustl[ed] her down the driveway to be frisked." (*Id.* at 35). These factual assertions support Deputy Byrd's contention that he did not direct Officer McCallister to arrest Alexander, and Officer McCallister's declaration that the decision to arrest Alexander was strictly his own.

### 3. Probable Cause

With respect to the false arrest claim, Deputy Byrd's Motion for Summary Judgment argued in the alternative that probable cause existed for Alexander's arrest. Because we find that Alexander has failed to establish that Deputy Byrd had a duty to protect her from false arrest, or that Deputy Byrd was personally involved in her arrest, we do not reach the issue of whether probable cause existed for the arrest. We conclude that the district court properly dismissed the false arrest claim against Deputy Byrd.

### D. Conspiracy

As the district court noted, some of Alexander's allegations could be construed as alleging a conspiracy on the part of Deputy Byrd and the other officers at the scene of her arrest. However, the allegations of a "conspir[acy] to arrest, imprison, and prosecute" her were not taken up or developed in Alexander's summary judgment response. Therefore, we deem this argument waived. *See Haddad*, 610 F. App'x at 568-69.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.